COLE et al., Appellants,

v.

AMERICAN INDUSTRIES AND RESOURCES CORPORATION et al., Appellees.

[Cite as *Cole v. Am. Industries & Resources Corp.* (1998), 128 Ohio App.3d 546.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 96–JE–51.

Decided July 31, 1998.

*Kinder, Harper, Hazlett & Hinzey* and *Marlin J. Harper; Gorr Moser Dell & Loughney, Melvin L. Moser* and *John H. Williams, Jr.,* for appellant Westfield Insurance Company.

*Freifield, Bruzzese, Wehr, Moreland, Straus & Spahn* and *Frank J. Bruzzese*, for appellee Gerald W. Bioux Construction Company.

---

WAITE, Judge.

This matter presents a timely appeal from a judgment rendered by the Jefferson County Common Pleas Court, sustaining the motion for summary judgment filed by appellee, Gerald W. Bioux Construction Company ("Bioux"), entering declaratory judgment in Bioux's favor and awarding it reimbursement for attorney fees and litigation expenses.

On February 8, 1995, appellant, Barbara Cole ("Cole"), filed a complaint, which was subsequently amended, against numerous defendants seeking to collect damages for personal injuries and other losses arising as a result of an explosion which occurred at her residence on June 25, 1994. Bioux was the construction company hired to excavate the foundation for Cole's residence and to rough-grade the lots upon which the residence was built. Cole alleged in her complaint that during excavation, Bioux improperly and negligently distributed the excavated soil over a manhole, preventing ventilation of flammable gases and allowing these gases to enter her residence thus causing the explosion.

Allegedly as a result of that explosion, Junior Lee Taylor was killed, and on November 8, 1995, Norma Taylor ("Taylor"), executor of his estate, filed a complaint against numerous defendants, including Bioux, for the death of her husband. Since the Cole and Taylor actions presented identical questions of fact and law, the trial court consolidated these.

Bioux was insured under a commercial insurance policy issued by appellant Westfield Insurance Company ("Westfield"). Upon receipt of both complaints, Bioux demanded that Westfield provide it with a defense and coverage as to the actions. By correspondence dated December 6, 1995, Westfield denied Bioux's demand. In the letter Westfield referred Bioux to the declarations page of the policy and pointed out to Bioux that it had declined to purchase products/completed-operations coverage at the time it secured the coverage. Westfield stated in the letter that since the loss in question occurred long after Bioux's operations were completed and it left the job site, the policy of insurance did not apply to the alleged losses and no coverage for either defense or indemnification existed based on an exclusion for products/completed-operations hazards contained in the policy as purchased.

Westfield then filed a motion to intervene in the underlying Cole–Taylor actions, asserting that since it also insured Cole under a homeowner's policy of insurance and had paid her certain sums for real and personal property damage, it had common questions of law and fact in the action filed by Cole as a result of

Westfield's subrogation rights. The trial court granted the motion to intervene by order filed March 26, 1996. The homeowners policy of insurance issued by plaintiff to Cole is not itself at issue in this appeal.

Bioux filed its answer to the underlying actions, along with a counterclaim seeking declaratory judgment against Westfield on May 1, 1996. The counterclaim sought a declaration that Bioux was entitled to defense and indemnification from Westfield in the Cole–Taylor suits and that Bioux was entitled to full coverage under the terms of the commercial insurance policy issued by Westfield.

Following discovery, Bioux filed a motion for summary judgment in the Cole–Taylor actions and also filed a motion for summary judgment as to its counterclaim seeking declaratory judgment against Westfield. A hearing was held before the trial court on July 15, 1996, and the lower court filed its journal entry granting summary judgment in favor of Bioux as to its counterclaim on August 2, 1996. In entering declaratory judgment in Bioux's favor the court specifically held as follows:

"1. Gerald W. Bioux Construction Company is entitled to coverage under the terms of the Westfield Insurance Company Commercial Package Policy, * * * as prayed for; and,

"2. Westfield Insurance Company is obligated to provide indemnification and a defense to Gerald W. Bioux Construction Company in connection with the underlying suits and claims brought by Barbara Cole, Norma Taylor and Westfield Insurance Company * * *; and,

"3. Gerald W. Bioux Construction Company is entitled to reimbursement for attorney's fees and litigation expenses incurred in the defense of each of said underlying cases, and incurred in the prosecution of Gerald W. Bioux Construction Company's CounterClaim for Declaratory Judgment, and Westfield Insurance Company is ordered to reimburse Gerald W. Bioux Construction Company for those fees and expenses * * *."

The court ordered that Bioux file and submit to Westfield an itemized statement for attorney fees and litigation expenses, after which Westfield would then have ten days to request an evidentiary hearing on these expenses if desired. The trial court filed an additional judgment entry on August 5, 1996, granting Bioux's motion for summary judgment on the underlying Cole–Taylor actions and dismissing all claims and cross-claims against Bioux. The trial court stated however, that Bioux would remain a party to the declaratory judgment action pending resolution of its claim against Westfield.

Bioux filed its statement for services rendered on September 20, 1996, and Westfield thereafter promptly requested an evidentiary hearing. A hearing was held on October 21, 1996, after which the trial court filed a judgment entry on

November 19, 1996, awarding Bioux the sum of $23,507.62 for attorney fees and litigation expenses. Westfield filed its notice of appeal on December 16, 1996.

At the outset it must be noted that Bioux complains that Westfield has failed to bring this appeal in a timely manner. App.R. 4(B)(5) provides:

"*Partial Final Judgment or Order.* If an appeal is permitted from a judgment or order entered in a case in which the trial court has not disposed of all claims as to all parties, other than a judgment or order entered under Civ.R. 54(B), a party may file a notice of appeal within thirty days of entry of the judgment or order appealed or the judgment or order that disposes of the remaining claims."

As there was a remaining issue to be resolved with regard to the award of attorney fees and litigation expenses following the trial court's August 2, 1996, journal entry, the fact that Westfield did not file a notice of appeal within thirty days of August 2, 1996, is not fatal to the within appeal. Until the trial court filed its judgment entry on November 19, 1996, concerning attorney fees and litigation expenses, all issues had not been fully addressed as they related to the parties.

Westfield's sole assignment of error on appeal alleges:

"The Trial Court erred by granting Appellee Gerald W. Bioux Construction Company's Motion for Summary Judgment."

Civ.R. 56(C) recites:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

As set forth by the Ohio Supreme Court in *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129, 1132:

"Under Civ.R. 56, summary judgment is proper when '(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. Nevertheless, summary judgment is appropriate where a plaintiff fails to produce evidence supporting the essentials of its claim." (Citations omitted.)

The Ohio Supreme Court in *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, held that a moving party cannot discharge its initial burden under

Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support its claims.

The Ohio Supreme Court in *Dresher* further held that once the moving party has met its initial burden, the nonmoving party must then produce any evidence for which that party bears the burden of production at trial. In reviewing a trial court's decision to grant summary judgment, a court of appeals must conduct a *de novo* review of the record. *Renner v. Derin Acquisition Corp.* (1996), 111 Ohio App.3d 326, 676 N.E.2d 151.

Westfield argues that there was clearly no coverage available to Bioux under the commercial insurance policy at issue and thus Westfield owed no duty to defend. Westfield states that the losses claimed in the underlying Cole–Taylor actions arose out of work alleged to have been negligently performed by Bioux in excavating Cole's residential foundation, but that the explosion occurred and the losses were caused long after Cole had moved into her residence and long after Bioux's work was completed.

Westfield argues that the losses in question fell within the products/completed-operations hazard provision of the parties' commercial insurance policy, which refers to liability arising after the product or work of an insured has been completed. Westfield maintains that because Bioux declined to purchase products/completed-operations coverage, as was evident from the declarations page issued along with its commercial insurance policy, the losses at issue here were specifically excluded by the endorsement to the policy. Based on the record before us we find that appellant Westfield's argument has merit and reverse the decision of the trial court.

The endorsement to the parties' commercial insurance policy contains a provision concerning products/completed-operations hazards, which provides that Bioux's coverage under the policy does not apply to bodily injury or property damage that may fall within the completed-operations provision. Products/completed-operations hazard is defined under Section IV, Commercial General Liability Conditions, as follows:

"11.a. 'Products-completed operations hazard' includes all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except:

"(1) Products that are still in your physical possession; or

"(2) *Work that has not yet been completed* or abandoned," (Emphasis added.)

"Your work" is defined under Section IV, Commercial General Liability Conditions, at paragraph 15 as being work or operations which the insured performed or had performed on its behalf and the materials, parts, or equipment utilized in conjunction with the work or operations. "Your work" also includes warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of "your work" and the providing or failure to provide warnings or instructions.

At page one of the Commercial General Liability Coverage Form, under Section I, Coverages, Coverage A. Bodily Injury and Property Damage Liability, Bioux's commercial insurance policy provides:

"1.   Insuring Agreement.

"a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages.   * * *

" * * *

"b.   This insurance applies to 'bodily injury' and 'property damage' only if:

"(1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and

" * * *

"c.   Damages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.' "

Both of the complaints in the underlying Cole–Taylor actions allege that an explosion occurred as the result of the accumulation of gas following Bioux's negligence in performing his work. Both of the complaints allege bodily injury and/or property damage.

■■   There are four separate tests which must be applied to determine whether or not an insurance company has a duty to defend its insured. If any one of the tests results in a determination that the duty to defend exists, then the insurance company is obligated to defend. Pursuant to *Motorists Mut. Ins. Co. v. Trainor* (1973), 33 Ohio St.2d 41, 62 O.O.2d 402, 294 N.E.2d 874, paragraph two of the syllabus, the "allegations rule" provides that if the scope of the allegations contained in the injured party's complaint brings the action within the policy coverage, the insurance company is "required to make a defense, regardless of the ultimate outcome of the action or its liability to the insured."

■■ In *Sanderson v. Ohio Edison Co.* (1994), 69 Ohio St.3d 582, 635 N.E.2d 19, the Ohio Supreme Court cited *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 9 OBR 463, 459 N.E.2d 555, in discussing the "expanded allegations rule." This rule holds that if an insurer's duty to defend is not apparent from the pleadings, but the allegations state a claim which is potentially or arguably within the policy coverage or there is some doubt as to whether the pleadings state a theory of recovery which is within the policy coverage, the insurer must accept the defense of the claim. In *Sanderson,* the Ohio Supreme Court stated at paragraph one of its syllabus:

"An insurance policy which states that the insurer is obligated to defend in any action seeking damages payable under the policy against the insured, even where the allegations are groundless, false or fraudulent, imposes an absolute duty upon the insurer to assume the defense of the action where the complaint states a claim which is partially or arguably within policy coverage."

■ The "groundless, false or fraudulent claims" test provides that when an insurance company represents to its insured that it will undertake the defense of any claim asserting injury within coverage, even if the claims against the insured are factually unsupportable, the insurer must provide a defense and coverage so long as coverage would be available if the claims were proven true. *Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108, 30 OBR 424, 507 N.E.2d 1118.

■ Dispositive of the issue is the "true fact" test. This test provides that if there is no set of facts alleged in the complaint against an insured which, if proven true, would result in the insurance company's duty to pay damages, then the insurance company need not provide a defense. *Preferred Risk Ins. Co., supra.*

■ All of these tests have, at heart, the same principle. If there is any allegation in the complaint that raises even a question of insurable coverage, the insurer is duty-bound to defend the insured. Under any one of the four tests, there must be some set of facts, some allegation, which, if proved true, would require insurance coverage and a payment of insurance damages. In the present instance, there is no possible set of facts or allegations which, if proved true, would bind Westfield to provide coverage to Bioux. Thus, Westfield could not have a duty to defend under the "true facts" test discussed here and raised by *Preferred Risk, supra.*

■ The facts in the underlying case for which Bioux sought coverage and thus defense are this: Bioux was hired to excavate the foundation for a residence and to rough-grade the lots. Years later, after this job was long complete, an explosion occurred at the site, allegedly due to Bioux's faulty workmanship. Bioux had insurance on the initial project; however, it was insured only for the

actual performance at the time it was working on the job. As it failed or refused to purchase coverage for "completed operations" as discussed above, there was absolutely no way Bioux could have been covered for an explosion which occurred years after it had completed the job. Even if the allegations of the complaint proved true, the insurer was under no duty to cover Bioux's alleged negligence because the incident which gave rise to the lawsuit occurred years after the insured completed work on the project. Thus, as there is no way under the particular facts of the underlying suit and any theory of law in that suit that Westfield would have to pay damages, Westfield had no duty to defend.

The policy of insurance purchased by Bioux from Westfield was clear in its exclusionary language. Had Bioux, for an additional cost, wished to be covered as to negligence actions brought against work already performed and "abandoned" by it, it had the opportunity to purchase such coverage. The policy obtained by Bioux covered only injury and damages which occurred on property Bioux itself owned or which occurred on another's property and arose out of Bioux's work when that work "has not yet been completed or abandoned," as defined by Section IV, 11.a.(2) of the policy and discussed above.

As in *Zanco, Inc. v. Michigan Mut. Ins. Co.* (1984), 11 Ohio St.3d 114, 11 OBR 413, 464 N.E.2d 513, to find that coverage exists for Bioux's completed work would in effect change his commercial liability policy to a products liability policy and would give Bioux greater coverage than that purchased. Bioux was hired to excavate and grade; Bioux completed that work. Years later, an explosion occurred at the site of Bioux's work which was claimed to result from the negligent performance of the work itself. Bioux did not have an ongoing relationship with the homeowner, Bioux provided no advice as to the work to the homeowner, and the exclusionary language in Bioux's policy of insurance clearly provides no coverage for any damages which might arise from a completed-operations claim. Thus, the cases discussed and relied upon by Bioux in defense of this appeal are inapplicable.

For all of the foregoing, we find that the assignment of error put forth by appellant Westfield Insurance Company has merit, and accordingly we must reverse the decision of the Jefferson County Common Pleas Court.

*Judgment reversed.*

GENE DONOFRIO, P.J., and COX, J., concur.