OPINION
Plaintiff-appellant, James Burton ("appellant"), appeals from the grant of summary judgment in favor of defendant-appellee, Memorial Operations Company of Ohio ("Memorial"). Appellant filed a seven-count complaint, seeking to recover damages stemming from his employment with Memorial.
On January 24, 1993, appellant and Steve Rogers organized the Burton Funeral Home-Greenlawn Cemetery. Rogers owed ninety percent of the stock while appellant owned the remaining ten percent. Appellant was to pay Rogers fifty thousand dollars ($50,000) for his ten percent ownership interest in the establishment. Payments were to be made from the corporation's profits. Appellant admitted he never made any payment toward the obligation. The corporation agreed to pay for all of appellant's club and organization dues. Appellant also received use of an apartment and company vehicle.
In October of 1994, Rogers sold his interest in the business to Gibralter Mausoleum Corporation. Appellant entered into a stock redemption agreement with Gilbralter. The agreement stated appellant's ten percent ownership interest would be represented by forty (40) shares of Class B non-voting stock, valued at two dollars and fifty cents ($2.50) per share. Appellant paid one hundred dollars ($100) for the stock. The agreement further provided that if appellant's employment with the funeral home ended, the funeral home had the right to repurchase the forty shares of stock at the fixed value plus a ten percent increase for each year after the date of signing. The agreement was to be binding on appellant and upon the Burton Funeral Home-Greenlawn Cemetery and its successors and assigns. Gilbralter sold the funeral home to Service Corporation International in 1995. Service Corporation International in turn sold the corporation to Memorial in March of 1998.
Appellant's position with the corporation was that of funeral director. Appellant claimed Gerald Durham, the chief administrator of the funeral home, engaged in a pattern of harassment that was both verbal and physical. Appellant informed Memorial of the harassment, but stated nothing was done to alleviate the situation. Durham left the corporation not long after appellant made his complaint. Appellant also claimed that Memorial allowed the business to deteriorate, causing his reputation in the community to suffer.
Upon appellant's resignation from the corporation, Memorial invoked the stock repurchase agreement and issued appellant a check for one hundred sixty-one dollars and twenty cents ($161.20). Memorial claimed this represented appellant's entire interest in the company.
On July 6, 1999, appellant filed a complaint for money damages against Memorial. Appellant claimed his ten percent ownership interest in the corporation was valued far higher than the one hundred sixty-one dollars and twenty cents Memorial paid to redeem his stock. Appellant brought a cause of action for the verbal and physical harassment by Gerald Durham. Appellant also claimed his reputation in the community was damaged when Memorial failed to properly maintain the cemetery, eventually leading to negative publicity and a loss of business. Appellant further contended his reputation was damaged because Memorial refused to pay for his dues in several civic organizations. Appellant brought an additional cause of action regarding his loss of reputation in the community because Memorial did not file an annual pre-need report with the Board of Embalmers and Funeral Directors of Ohio. Appellant stated he was damaged when Memorial refused to provide him with an apartment and vehicle, privileges he had enjoyed under his original employment agreement with Rogers. Appellant amended his complaint on August 4, 1999, adding a cause of action requesting Memorial be enjoined from using the name "Burton" in its funeral home operation.
On April 21, 2000, Memorial filed its motion for summary judgment. Memorial argued that the value of appellant's ownership interest in the corporation was established in the stock redemption agreement. Memorial contended appellant's causes of action for harassment and loss of reputation were not recognized in Ohio. Memorial stated appellant's cause of action for undue hardship because he no longer had an apartment or automobile as part of his compensation was not based upon law or fact. Lastly, Memorial submitted that R.C. 4717.11 permitted it to continue to operate the funeral home under appellant's name.
On May 30, 2000, appellant filed his brief in opposition to Memorial's summary judgment motion. Appellant argued that various issues of fact remained in dispute, precluding the grant of summary judgment. Appellant argued he was required by law to own at least a ten percent ownership interest which was worth well in excess of the amount Memorial paid him to redeem his shares of stock. Appellant contended his deposition testimony which he asserted demonstrated the pattern of harassment by Durham. Appellant stated his reputation suffered damage because Memorial did not properly maintain the cemetery, failed to file the pre-need report, and denied him the use of the apartment and automobile.
On June 28, 2000, the trial court issued its judgment entry granting Memorial's motion for summary judgment on six of the seven counts. The trial court denied Memorial summary judgment for appellant's claim of undue hardship because of the loss of the apartment and vehicle. On July 10, 2000, the trial court determined there was no just reason for delay pursuant to Civ.R. 54(B). Appellant filed a timely appeal from this judgment.
Appellant assigns the following errors for review:
 "[1] The trial court erred in granting defendant's motion for summary judgment as there existed genuine issues of material fact, and because the defendant was not entitled to judgment as a matter of law.
 "[2] It constitutes reversible error for the trial court to grant a motion for summary judgment when there are unresolved genuine issues of material fact, and when the movant is not entitled to judgment as a matter of law."
 Appellant's assignments of error will be addressed together as similar issues of law and fact are present.
This case was decided by summary judgment. Summary judgment is a procedural device designed to terminate litigation and to avoid a formal trial where there is nothing to try. Norris v. Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1. Doubts must be resolved in favor of the nonmoving party. Davis v. Loopco Industries, Inc. (1993),66 Ohio St.3d 64, 66. Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue of material fact remaining to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. The nonmoving party is entitled to have the evidence construed most strongly in his or her favor. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367.
A party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293-294. The moving party has the burden even with regard to issues for which the plaintiffs would have the burden of proof should the case go to trial. Vahila v.Hall (1997), 77 Ohio St.3d 421 . Once a party has satisfied this incipient burden, a reciprocal burden arises upon the nonmoving party to respond and set forth specific facts showing that there is a genuine issue of material fact to be resolved at trial. Dresher, supra, at 293. A "material" fact is one that would affect the outcome of the suit under the applicable substantive law. Russell v. Interim Personnel, Inc. (1999), 135 Ohio App.3d 301.
When reviewing a summary judgment case, appellate courts are to apply ade novo standard of review. Cole v. American Indus. and Resources Corp. (1998), 128 Ohio App.3d 546, 552. A reviewing court will apply the same standard a trial court is required to apply, which is to determine whether any genuine issues of material fact exist and whether the moving party was entitled to judgment as a matter of law. Parenti v. GoodyearTire Rubber Co. (1990), 66 Ohio App.3d 826, 829.
Appellant first argues that his ten percent ownership interest in the business was valued at far more than the one hundred sixty-one dollars and twenty cents Memorial paid for his stock. Appellant contends the stock redemption agreement, which Memorial based the payment upon, was never meant to replace the fifty thousand dollar promissory note executed with his original partner. Further, appellant maintains he had to own a minimum of ten percent of the business by law. In support of this contention, appellant relies upon R.C. 4717.11(A)(2), which had required a licensed director of a funeral home to own a substantial financial interest in the business, which interest was to consist of not less than ten percent of the assets of the establishment. Appellant neglects to mention that R.C. 4717.11(A)(2) was repealed, effective August 5, 1998. After that date, appellant had no legal obligation to own a financial interest in the funeral home.
Appellant's original agreement with Steve Rogers provided that appellant would receive a ten percent ownership interest in the company represented by a fifty thousand dollar ($50,000) promissory note. The note itself is not part of the record. Appellant admitted he never made any payment towards the promissory note. There is nothing in the employment contract indicating it would be binding on any of Rogers' successors. Appellant did execute the stock redemption agreement with Gilbralter. That agreement clearly states that appellant received forty shares of Class B non-voting stock, which represented ten percent of the outstanding common stock of the corporation. The value of the stock is set forth in the agreement as being worth two dollars and fifty cents per share. The total purchase price for the stock was one hundred dollars. The value of the stock would increase by ten percent for each additional year it was held. The agreement was binding on appellant, his heirs, executors, and administrators. The agreement also bound Gilbralter and its successors and assign.
The interpretation of a contract that is clear and unambiguous is a question of law, and no issue of fact exists to be determined. State exrel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511. Questions of law are reviewed de novo. Long Beach Assn., Inc. v. Jones (1998),82 Ohio St.3d 574. In addressing the language of a written contractual agreement, the primary objective of a court is to ascertain and give effect to the intent of the parties. Foster Wheeler Enviresponse, Inc.v. Franklin Cty. Convention Facilities Auth. (1997), 78 Ohio St.3d 353.
There is no evidence in the record supporting appellant's contention his ownership interest in the funeral home was worth more that the one hundred sixty-one dollars and twenty cents Memorial paid for the stock. The terms of the stock redemption agreement support this amount. Appellant willingly signed the stock redemption agreement and is bound by its terms. The trial court did not err by granting Memorial summary judgment on this issue.
Appellant contends material facts were in dispute regarding his cause of action for harassment. Appellant stated another employee, Gerald Durham, engaged in a pattern of harassment involving verbal abuse and an incident when Durham kicked the door to appellant's apartment, entered the apartment, and began screaming at appellant.
R.C. 4112.02(A) governs unlawful employer discriminatory practices. It provides it is an unlawful discriminatory practice:
 "For any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."
 Appellant does not claim the harassment was caused by any of the factors set forth in R.C. 4112.02(A). Appellant has not cited to any statute or case law in support of his cause of action for harassment based upon the behavior exhibited by Durham.
There is no indication appellant is arguing he suffered from the infliction of emotional distress. Even so, the evidence would not support this cause of action in the instant case. Ohio does not recognize the tort of negligent infliction of emotional distress in the employment setting. Tackas-Davis v. Concorde Castings, Inc. (Dec. 15, 2000), Lake App. No. 99-L-035, unreported, 2000 Ohio App. LEXIS 5920. To sustain a claim of intentional infliction of emotional distress, appellant would have to show: (1) Memorial either intended to cause emotional distress or knew or should have known that its actions would result in serious emotional distress to appellant; (2) that Memorial's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) that Memorial's actions were the proximate cause of appellant's psychic injury; and (4) that the mental anguish appellant suffered is serious and of a nature that no reasonable person could be expected to endure. See Yeager v. Local Union 20 (1983),6 Ohio St.3d 369. There is no argument or evidence Memorial engaged in intentionally causing appellant emotional distress. Therefore, appellant's claim of harassment is not a cognizable cause of action under Ohio law based upon the facts of this case.
Appellant states that Memorial's failure to properly maintain the cemetery and its grounds damaged his reputation in the community. Appellant further maintains that Memorial's refusal to pay for his dues to various local community organizations resulted in further damage to his reputation. There is no separate cause of action in Ohio for the damage to one's reputation in the community. The trial court did not err by granting Memorial's summary judgment motion on these claims.
Appellant also asserts he was damaged by Memorial's failure to file a pre-need report with the State of Ohio in 1998. The State of Ohio requires that an annual pre-need report be filed, detailing the amount of money deposited into a funeral home for citizens who would like to prepare for their funerals and gravesites. Appellant states he was cited by the State Board of Embalmers and Funeral Directors because of the failure to file the report. Appellant claims he was damaged because the incident is now on his record, which could affect him if any charges are filed in the future.
Memorial admitted it bore the responsibility of filing the pre-need report with the State of Ohio, but did not do so in a timely fashion in 1998. As a result, the State of Ohio fined appellant and cited him for the omission. Although Memorial eventually filed the pre-need report and reimbursed appellant for the fine, the citation remains on appellant's record and could be considered by the State of Ohio if another charge is filed against appellant. There was evidence before the trial court showing appellant may have been damaged by Memorial's failure to file the 1998 pre-need report on time. As such, the material facts for appellant's fifth cause of action are in dispute. The trial court erred by granting Memorial summary judgment on this cause of action.
Appellant's first and second assignments of error are overruled in part and well-taken with regard to his fifth cause of action. The judgment of the trial court is affirmed in part, reversed with respect to the fifth cause of action, and remanded for further proceedings consistent with this decision.
 ___________________________ JUDGE DIANE V. GRENDELL
O'NEILL, P.J., FORD, J., concur.