OPINION
[¶ 1] Plaintiff-appellant, Cora Palmer, individually and as the executor of the Estate of George Roger Palmer, appeals from the decision of the Monroe County Court of Common Pleas granting summary judgment to defendant-appellee, Westfield Companies.
[¶ 2] On November 24, 2000, appellant filed a complaint personally and as the executor of the estate of George Roger Palmer against appellee and Ohio Mutual Insurance Group ("Ohio Mutual") seeking compensation for Mr. Palmer's death, which resulted from an automobile/pedestrian accident. The complaint alleged that when Mr. Palmer was injured he was working as a volunteer firefighter for the village of Woodsfield ("Woodsfield") and that Woodsfield had an insurance policy with appellee at the time. The complaint further alleged that the negligent driver who struck Mr. Palmer was an underinsured motorist. Thus, appellant sought underinsured motorist compensation from appellee and Ohio Mutual, with whom Mr. Palmer had an insurance contract.
[¶ 3] Appellee filed a motion for summary judgment on April 2, 2001, alleging that it did not owe coverage to appellant because Woodsfield signed an express waiver of UIM coverage under the policy it issued. Appellant failed to file a response. The trial court entered summary judgment in favor of appellee on August 30, 2001, finding that UIM coverage was not available to appellant because Woodsfield signed a valid rejection of such coverage. Appellant subsequently filed a motion for relief from judgment, which the court granted. The court gave appellant 14 days within which to file an answer to appellee's summary judgment motion. Appellant filed her response on October 3, 2001. On October 4, 2001, the trial court again granted appellee's motion for summary judgment and found that there was no just reason for delay. Appellant filed her timely notice of appeal on October 12, 2001.
[¶ 4] Appellant asserts one assignment of error, which states:
 [¶ 5] "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT AND FINDING APPELLEE WESTFIELD INSURANCE COMPANY HAD MADE A VALID WRITTEN OFFER OF UM/UIM COVERAGE WHICH WAS PROPERLY REJECTED."
 [¶ 6] Appellant argues that the trial court erred in ruling that appellee had made a valid written offer of UM/UIM coverage as stated inLinko v. Indem. Ins. Co. of N. Am. (2000), 90 Ohio St.3d 445. The Linko
decision clarified the Ohio Supreme Court's earlier decision of Gyori v.Johnston Coca-Cola Bottling Group, Inc. (1996), 76 Ohio St.3d 565. Gyori
held that "[i]n order for a rejection of uninsured motorist coverage to be expressly and knowingly made, such rejection must be in writing and must be received by the insurance company prior to the commencement of the policy year." Id. at paragraph two of the syllabus. In Linko, the court elaborated on its holding in Gyori stating:
 [¶ 7] "To satisfy the offer requirement of R.C. 3937.18, the insurer must inform the insured of the availability of UM/UIM coverage, set forth the premium for UM/UIM coverage, include a brief description of the coverage, and expressly state the UM/UIM coverage limits in its offer." Id. at 447-48.
 [¶ 8] Appellant contends that the Linko requirements apply to the case at bar. She further contends that the rejection form appellee relies on does not satisfy the requirements because it fails to inform the insured of the availability of UM/UIM insurance, to set forth the premium, to provide a brief description of the coverage, or to expressly state the UM/UIM limits. Appellant claims that since appellee's rejection form does not fulfill the necessary requirements, it was an invalid coverage offer and therefore the insured could not make a valid rejection of coverage. Thus, she claims UM/UIM coverage arose by operation of law.
[¶ 9] The Ohio Supreme Court set out the standard for considering motions for summary judgment in Dresher v. Burt (1996), 75 Ohio St.3d 280. The court stated:
 [¶ 10] "We hold that a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence
of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." (Emphasis sic.) Id. at 293.
 [¶ 11] Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. State ex rel. Parsons v. Flemming (1994),68 Ohio St.3d 509, 511. A "material fact" depends on the substantive law of the claim being litigated. Hoyt, Inc. v. Gordon Assoc., Inc.
(1995), 104 Ohio App.3d 598, 603. When reviewing a summary judgment case, appellate courts are to apply a de novo standard of review. Colev. American Indus. and Resources Corp. (1998), 128 Ohio App.3d 546, 552.
[¶ 12] In the case at bar, the trial court noted that the law surrounding UM/UIM coverage has undergone several changes in recent years. The court noted that the law in effect on the date of the issuance of each new policy is the law to be applied to the case. The court determined that because the policy in question covered the period of October 31, 1998 through October 31, 1999, the H.B. 261 changes to R.C.3937.18 applied to this case since they took effect on September 3, 1997. The trial court pointed out that R.C. 3937.18 provides that if an insured signs a written rejection of UM/UIM coverage, it shall be presumed that the insurer offered coverage. Thus, since Woodsfield made a valid written waiver of UM/UIM coverage on April 10, 1991, this created a presumption that appellee made a valid offer of such coverage. The court found that the rejection continued to be in effect for each renewal of the policy. For these reasons, the trial court found that UIM coverage was not available to appellant.
[¶ 13] The post-H.B. 261 version of R.C. 3937.18 in effect during the coverage period provided in pertinent part:
 [¶ 14] "(C) A named insured or applicant may reject or accept both coverages [UM/UIM] as offered under division (A) of this section, or may alternatively select both such coverages in accordance with a schedule of limits approved by the superintendent. * * *. A named insured's or applicant's rejection of both coverages as offered under division (A) of this section, or a named insured's or applicant's selection of such coverages in accordance with the schedule of limits approved by the superintendent, shall be in writing and shall be signed by the named insured or applicant. A named insured's or applicant's written, signed rejection of both coverages as offered under division (A) of this section, or a named insured's or applicant's written, signed selection of such coverages in accordance with the schedule of limits approved by the superintendent, shall be effective on the day signed, shall create a presumption of an offer of coverages
consistent with division (A) of this section, and shall be binding on all other named insureds, insureds, or applicants.
 [¶ 15] "Unless a named insured or applicant requests such coverages in writing, such coverages need not be provided in or made supplemental to a policy renewal or replacement policy where a named insured or applicant has rejected such coverages in connection with a policy previously issued to the named insured or applicant by the same insurer. * * *." (Emphasis added.)[1]
 [¶ 16] According to this section, a written rejection of UM/UIM coverage by the insured creates a presumption that the insurer made a valid offer of such coverage. Additionally, once the insurer makes such an offer and the insured makes a rejection, the insurer need not offer UM/UIM coverage every time the insured renews its policy. The insured's written rejection carries over to each renewal or replacement of the policy. The only exception is if the insured makes a request in writing for UM/UIM coverage.
[¶ 17] The parties entered into the policy in question after the enactment of H.B. 261 (September 3, 1997) and before the enactment of S.B. 97 (October 31, 2001). The policy covered the period of October 31, 1998 through October 31, 1999. Appellee attached Woodsfield's April 10, 1991 rejection of UM/UIM coverage to its motion for summary judgment. It identifies the Village of Woodsfield as the insured and provides:
 [¶ 18] "Section 3937.18 of the Ohio Revised Code currently requires that all policies include Uninsured Motorist Insurance and Underinsured Motorist Insurance at limits equal to the Bodily Injury Limits carried on the policy.
 [¶ 19] "However, other options of limits or rejection of all coverages are available.
 [¶ 20] "I. REQUEST FOR OPTIONAL UNINSURED/UNDERINSURED MOTORISTS LIMITS
[¶ 21] "* * *
 [¶ 22] "I (We), the undersigned, hereby request (in connection with the application or policy indicated above and renewals and replacements thereof issued by the Ohio Farmers Insurance Company or Westfield Insurance Company or Westfield National Insurance Company) that the policy afford the following Uninsured/Underinsured Motorists limits (not to exceed the Bodily Injury limits provided by the policy). These limits are to be effective ___."
 [¶ 23] The form then provides boxes to check next to several different choices of limits per person and per accident and signature lines follow. No boxes are checked and no one signed the signature lines. The form then continues:
[¶ 24] "II. REJECTION OF UNINSURED/UNDERINSURED MOTORISTS COVERAGE
[¶ 25] "* * *
 [¶ 26] "I (We), the undersigned, hereby reject (in connection with the application or policy indicated above and renewals and replacements thereof issued by the Ohio Farmers Insurance Company or Westfield Insurance Company or Westfield National Insurance Company) Uninsured/Underinsured Motorists coverage entirely. This rejection is to be effective 10/31/91."
 [¶ 27] The rejection, dated April 10, 1991, is signed by the insurance agent and Woodsfield's village clerk.
[¶ 28] Appellant argues that this rejection was not valid because there is no evidence of a proper offer, which should inform the insured of the availability of UM/UIM coverage, set forth the premium for such coverage, and include a brief description of the coverage and its limits. Citing, Linko, 90 Ohio St.3d at 447-48. Appellant is correct, the form does not comply with the Linko requirements. It fails to set out the premiums for UM/UIM coverage or to give a brief description of the coverage. The question we must address then is whether the offer requirements apply to the case at bar. We find they do.
[¶ 29] The Fifth District Court of Appeals recently addressed this issue in Pillo v. Stricklin, 5th Dist. No. 2001CA00204, 2001-Ohio-7049. In upholding the trial court's award of summary judgment in favor of the plaintiff/insured, the court determined that H.B. 261 did not eliminate the Linko requirements. The court opined that no provisions in H.B. 261 clarified or modified what the contents of a written offer must be. The court approved of the trial court's reasoning that the defendant/insurer did not make a complete offer of UM/UIM coverage because it did not meet the Linko requirements even though the plaintiff/insured signed a rejection form selecting lower limits of UM/UIM coverage. It further held that the "presumption" referred to in R.C. 3937.18(C) is rebuttable.
[¶ 30] The case of Minor v. Nichols, 4th Dist. No. 01CA14, 2002-Ohio-3310, gives us further support in favor of appellant's position. In Minor, like the case at bar, the court was faced with the question of whether the Linko requirements applied to a post-H.B. 261 rejection of UM/UIM coverage. Attached to the defendant's summary judgment motion was a signed "`UNINSURED/UNDERINSURED MOTORISTS COVERAGE SELECTION/REJECTION/LIMITS SUMMARY.'" The court noted that this summary form created a presumption of an offer of UM/UIM coverage. The court stated that once the defendant produced this signed rejection form, the burden shifted to the plaintiff to rebut the presumption. The plaintiff, attempting to rebut the presumption, argued that the summary form included the offer and then argued the offer did not comply with Linko. The court stated that had the summary form also been the offer, it would agree with the plaintiff. However, the court went on to point out the summary form expressly indicated that an "`UNINSURED/UNDERINSURED MOTORISTS COVERAGE SELECTION/REJECTION AND LIMITS OPTIONS'" form accompanied the policy. The summary form also stated that by signing the summary form, the insured indicated that it had read and understood the "`UNINSURED/UNDERINSURED MOTORISTS COVERAGE SELECTION/REJECTION AND LIMITS OPTIONS'" form. The summary form also stated in capital letters that it was not a substitute for reviewing the individual state's selection/rejection form for UM/UIM coverage and that the insured was required to do so.
[¶ 31] The court determined that the summary form clearly indicated that the "`UNINSURED/UNDERINSURED MOTORISTS COVERAGE SELECTION/REJECTION AND LIMITS OPTIONS'" form was the offer and the summary form was nothing other than the rejection form. Therefore, the court concluded that the plaintiff could not look to the summary form to supply the terms of the offer. Accordingly, the court affirmed the summary judgment for the defendant.
[¶ 32] The case at bar, however, is distinguishable from Minor. In the present case, there is no "other form" providing the terms of the offer. Thus, although appellant makes the same argument as the plaintiff in Minor, this case must have a different outcome. Appellant contends that the form signed by Woodsfield does not contain the Linko requirements, thus it is not a valid offer. Appellee contends that per R.C. 3937.18(C), a signed rejection raises a presumption of a valid offer. Both are correct. Although R.C. 3937.18(C) creates a rebuttable presumption of a valid offer when the insured produces a written rejection, it does not eliminate the requirements of a valid offer.Edstrom v. Universal Underwriters Ins. Co., 10th Dist. No. 01AP-1009, 2002-Ohio-3334, at ¶ 22. The signed rejection form, standing alone, raised the presumption that appellee made a valid offer of UM/UIM coverage. The burden then shifted to appellant to rebut the presumption of a valid offer. Appellant has met her burden by using the same form that raised the presumption in the first place. Appellant asserts that the rejection form was also the offer of UM/UIM coverage. There is no evidence to the contrary. Although the form states that UM/UIM coverage is available and sets out the coverage limits, it fails to set out the premium for UM/UIM coverage and does not include a brief description of the coverage. Therefore, appellant's argument must prevail. Accordingly, appellant's sole assignment of error has merit.
[¶ 33] For the reasons stated above, the decision of the trial court is hereby reversed and remanded for further proceedings consistent with this opinion.
Vukovich and DeGenaro, JJ., concur.
[1] R.C. 3937.18 has been amended several times in past years including: October 20, 1994; September 3, 1997; November 2, 1999; September 21, 2000; and October 31, 2001.