[Cite as *Irwin v. Island Creek Twp.*, 2021-Ohio-3306.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
JEFFERSON COUNTY

TUCKER IRWIN,

Plaintiff-Appellee,

v.

ISLAND CREEK TOWNSHIP,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 20 JE 0019

---

Civil Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 20 CV 111

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Reversed

---

*Atty. Kevin Pearl*, Frankovitch, Anetakis, Simon, Decapio, 337 Penco Road, Weirton, West Virginia 26062, for Plaintiff-Appellee and

*Atty. Mel Lute, Jr.,* Baker, Dublikar, Beck, Wiley & Mathews, 400 South Main Street, North Canton, Ohio 44720, for Defendant-Appellant.

Dated:
September 17, 2021

**Donofrio, J.**

**{¶1}** Defendant-appellant, Island Creek Township (the township), appeals from a Jefferson County Common Pleas Court judgment denying its motion for summary judgment on its claim for political subdivision immunity.

**{¶2}** Township Road 350, aka Jeffries Road (the Road), is located in the township. In June 2019, a large storm passed through Jefferson County, including through the township, which washed out a portion of the Road. Ralph Grimm, the township road superintendent, after consultation with the township trustees, determined the Road should be blocked off before and after the location of the washout. The township took measures to block off the Road including posting signs, setting up barrels, and erecting a dirt barrier.

**{¶3}** Late into the night of July 4, 2019, 17-year-old plaintiff-appellant, Tucker Irwin, went out for a drive on his Yamaha all-terrain vehicle (the ATV). He was unaware that the Road was closed. Tucker remembered driving past the last residence on the Road. He then drove into the dirt barrier. He lost consciousness from the impact and sustained a fractured clavicle.

**{¶4}** Irwin, through his mother, filed a complaint against the township asserting the township breached its duty to maintain the roads. The township filed an answer raising numerous defenses, including immunity.

**{¶5}** The township next filed a motion for summary judgment. It alleged that it was entitled to political subdivision immunity and that Irwin assumed the risk of driving an unlicensed vehicle illegally on a closed road. Irwin filed a response in opposition.

**{¶6}** The trial court held a hearing on the motion. The court noted that the township conceded it had a duty to close the Road due to the washout and the resulting dangerous condition for people to traverse it. The court went on to find that any immunity for the township was removed by the exception to immunity that the township had a duty to close the Road properly. It further found that whether the township closed the Road

properly was a question of fact for a jury. Therefore, the trial court denied the motion for summary judgment.

**{¶7}** The township filed a timely notice of appeal on October 9, 2020. It now raises two assignments of error.

**{¶8}** Generally the denial of a summary judgment motion is not a final, appealable order. But in this case it is. Here, the township's motion for summary judgment was based on the premise of governmental immunity. The Ohio Supreme Court has held: "When a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)." *Hubbell v. City of Xenia*, 115 Ohio St.3d 77, 873 N.E.2d 878, 2007-Ohio-4839, at the syllabus.

**{¶9}** In reviewing a trial court's decision on a summary judgment motion, appellate courts apply a de novo standard of review. *Cole v. Am. Industries & Resources Corp.*, 128 Ohio App.3d 546, 552, 715 N.E.2d 1179 (7th Dist.1998). Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Flemming*, 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994). A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**{¶10}** The township's first assignment of error states:

> THE TRIAL COURT ERRED WHEN IT FOUND A QUESTION OF FACT AS TO WHETHER TOWNSHIP ROAD 350 WAS PROPERLY CLOSED, THEREBY WRONGFULLY DENYING THE TOWNSHIP IMMUNITY UNDER R.C. 2744.02.

**{¶11}** In this assignment of error, the township argues the trial court incorrectly relied on the question of whether it properly closed the Road. It asserts that Irwin did not

allege in his complaint that the Road was not properly closed nor did he dispute that the Road was properly closed in his opposition to summary judgment. Instead, the township claims, Irwin asserted that township trustees had no option but to post a person at the Road closure area to ensure that the signs remained in place.

{¶12} In response, Irwin first asserts that he was legally operating his ATV at the time of his accident. Irwin goes on to argue that the township lost immunity by way of the exception requiring it to maintain its roads in a safe condition. Citing R.C. 2744.02(B)(3). He argues that the township failed to provide adequate signage to warn of the Road closure. Irwin contends that the duty to maintain signage for a known obstruction is mandatory. Citing, *Huffman v. Bd. of Cty. Commrs.*, 7th Dist. Columbiana No. 05 CO 71, 2006-Ohio-3479. He further points out that it was undisputed that the township erected the dirt pile and that there were no signs to warn of this obstruction. He contends that whether the township was negligent in this conduct is a question for a jury.

{¶13} Whether a political subdivision is entitled to immunity is analyzed using a three-tiered process. *Green Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556, 733 N.E.2d 1141 (2000). Under the first tier, R.C. 2744.02(A)(1) sets out the general rule that political subdivisions are not liable in damages. *Id.* at 556-57. Under the second tier, the court must determine whether any of the exceptions to immunity set out in R.C. 2744.02(B) apply. *Id.* at 557. Finally, under the third tier, if the court finds that any of R.C. 2744.02(B)'s exceptions apply, it must consider R.C. 2744.03, which provides defenses and immunities to liability. *Id.*

{¶14} Thus, we begin our analysis under the first tier with the premise that the township is not liable in damages here because it is a political subdivision.

{¶15} Under the second tier, the trial court found that the township is not entitled to immunity based on R.C. 2744.02(B)(3). This exception to immunity states, "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads." R.C. 2744.02(B)(3).

{¶16} In this case, the "obstruction" was the washed-out Road. In *Huffman*, supra, this court agreed with a trial court's finding that a fallen bridge was an "obstruction" to travel and even if the collapsed bridge was not considered an obstruction, a bridge

being collapsed would constitute a failure to keep a public road in repair. *Huffman*, 2006-Ohio-3479, at ¶ 53. So the question in this case becomes whether the township negligently failed to remove, or in this case negligently failed to close off and warn of, the washed-out Road.

{¶17} According to Ralph Grimm, the township road supervisor at the time of the accident, on June 19, 2019 there was a heavy storm that caused damage to multiple roads. (Grimm Dep. 16-17). Specific to this case, when the trustees learned of the damage to the Road that day they decided to put up signs and barrels to block access to the Road. (Grim Dep. 19-20, 21). Grimm's department bolted reflective "Road Closed" signs to sign posts and drove them into the ground and placed reflective barrels up using a piece of rubber to hold them in place. (Grimm Dep. 20). The next day, June 20, Grimm found that the signs and barrels had been stolen. (Grimm Dep. 23). So he replaced both the signs and the barrels. (Grimm Dep. 25). He relayed this information to the trustees who instructed him to also dump dirt to erect a barrier, which he did. (Grimm Dep. 24, 26-27). The next day, June 21, the signs and barrels had been stolen again. (Grimm Dep. 29-30). Once again, Grimm replaced them with new signs and new barrels. (Grimm Dep. 31). He then periodically checked to make sure the signs and barrels were still in place from June 21 until July 3. (Grimm Dep. 34-35, 37). On July 5, Trustee Sam Grafton called Grimm to tell him there had been an accident and that the signs and barrels were gone again. (Grimm 35-36). When Grimm arrived he saw that the signs and barrels had been thrown in a nearby ditch. (Grimm Dep. 37-38).

{¶18} Grafton stated that due to the storm waters, half of the Road had "slipped" over a hill. (Grafton Dep. 16-17). Grafton corroborated Grimm regarding the road closed signs and barrels being erected and stolen several times. (Grafton Dep. 22). Consequently, the trustees decided to erect a dirt barrier to prevent motorists from accidently driving over the washed out road and down the hill. (Grafton Dep. 26). The trustees' thinking was that even if the signs and barrels were stolen again, at least the dirt barrier would remain to block the road. (Grafton Dep. 26-27). Grafton confirmed that there are no lights near the area of the dirt barrier. (Grafton Dep. 36).

{¶19} The township acted promptly when the Road was washed out to put up signs and barrels to alert motorists of the washed out road. When those safety items

were stolen, the township replaced them. When they were stolen again, the township decided to add a second safety measure to prevent motorists from driving down an embankment. This led to the township erecting a dirt barrier along with the signage and barrels. Those items were all in place on July 3 when Grimm checked on the area during his daily inspections. No one checked the area the next day, July 4, the day of Irwin's accident. The safety items were found in a ditch on July 5. The township took multiple, appropriate measures to alert motorists of the closed road.

{¶20} This case is distinguishable from *Huffman*, supra, on which appellee relies. In *Huffman*, a rain storm caused major flooding that resulted in a bridge collapsing. County employees were notified at approximately 2:30 a.m. that the bridge was starting to fail. The next morning, Huffman ran his car into the void left by the fallen bridge and sustained serious injuries. County employees did not arrive at the bridge to erect signage and barriers until 7:30 a.m., one hour after Huffman's accident. Huffman then sued the county due to the length of time it took the county to respond to the notification that the bridge was starting to fall. The county asserted it was entitled to immunity. Both parties filed summary judgment motions.

{¶21} The trial court found that the fallen bridge was an "obstruction," which the county had a duty to remove. *Id*. at ¶ 16. It further found that while the county could not have feasibly repaired the road within the short amount of time between the bridge falling and Huffman attempting to travel over it, the obstruction could have been removed by the use of barricades and signs. *Id.* at ¶ 18. But the court went on to find that the use of signs and barricades is discretionary. *Id.* at ¶ 19. Therefore, the trial court found because of the discretionary nature of the decision to erect or not erect signs and barricades, the county was immune under R.C. 2744.03(A)(5). *Id*. Huffman appealed.

{¶22} On appeal, this court first stated that we agree with the trial court's finding that R.C. 2744.02(A)(3) was applicable because "a collapsed bridge falls under a failure to keep public roads in repair or a failure to remove obstructions." *Id*. at ¶ 50. We then went on to examine whether the county was negligent in its failure either to repair the road or to remove the obstruction. *Id*. at ¶ 54.

{¶23} We agreed with the trial court's determination that the only way the obstruction could be removed in this situation was through the erection of signage. *Id.* at

¶ 55. But we disagreed with the trial court's decision that there was no genuine issue of material fact as to whether the county negligently failed to remove the obstruction. *Id.*

**{¶24}** We stated that a collapsed bridge is an easily discoverable hazard. *Id.* at ¶ 59. Therefore, the decision of whether to barricade the bridge involves no discretion, policy-making, or engineering judgment. *Id.* We next moved on to examine whether the county acted negligently in failing to remove the obstruction. *Id.* at ¶ 60. In so doing we noted:

> The record indicates that between the time Parks found out about the bridge and the time that the accident occurred was a little over four hours. Parks did not notify the Sherriff's Department or anyone else that he would not be going out to the bridge until the morning. Deposition testimony revealed that several deputies were in the vicinity of the bridge that morning. Various deputies indicated that if they had been informed of the bridge, they would have attempted to blockade it. Whether or not they could have reached the bridge is debatable, but it is clear that no attempt was made to notify any of the deputies about the bridge's condition. Testimony also revealed that at around 3:00 a.m., the flood water was receding in certain areas of the county.

**{¶25}** Given these facts, we determined it was a question for the jury as to whether the county was negligent in not attempting to place signage or blockades at the collapsed bridge. *Id.* at ¶ 82.

**{¶26}** The facts of this case are distinguishable from those in *Huffman*. In this case, the washed-out Road was an obstruction, like the washed-out bridge was in *Huffman*. Significantly, however, here the township acted promptly to erect signs, barrels, and eventually a dirt blockade to stop motorists from driving into the area where the Road was washed out. Thus, there is no genuine issue of material fact, as there was in *Huffman,* as to whether the township was negligent in failing to place signage or blockades. Consequently, the R.C. 2744.02(B)(3) exception to immunity does not apply as the trial court found and the township is entitled to immunity.

Case No. 20 JE 0019

**{¶27}** Accordingly, the township's first assignment of error has merit and is sustained.

**{¶28}** The township's second assignment of error states:

> THE TRIAL COURT FAILED TO CONSIDER THE REINSTATEMENT OF ISLAND CREEK'S IMMUNITY PURSUANT TO R.C. 2744.03.

**{¶29}** In this assignment of error, the township argues that even if an exception to immunity applies, the R.C. 2744.03(A)(3) and (5) defenses to liability operate to reinstate its immunity.

**{¶30}** As we have already determined that the township has immunity, its second assignment of error is now moot.

**{¶31}** For the reasons stated above, the trial court's judgment is hereby reversed. Summary judgment is entered in favor of the township.

Waite, J., concurs.

D'Apolito, J., concurs.

Case No. 20 JE 0019

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is reversed.  Summary judgment is entered in favor of the Township.  Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**