OPINION
{¶ 1} Plaintiff-appellant, Tammy Noday, appeals from a Mahoning County Common Pleas Court decision granting summary judgment in favor of defendant-appellee, the Mahoning County Sheriff's Department.
 {¶ 2} Appellant was employed as a Mahoning County Sheriff's Deputy on June 2, 1994. As a sheriff's deputy, appellant was covered by a collective bargaining agreement (CBA). In 1997, appellee assigned appellant to the Major Crimes Unit (MCU). The MCU's major function was to investigate drug dealers and their activities.
 {¶ 3} During November 1997, allegations were brought to Sheriff Phil Chance's attention that appellant and Deputy Antonio Owens may have been involved in making false reports. Further investigation into the matter revealed that case files at issue were missing. Detectives believed that the files were in appellant's and/or Owens' possession. The two were directed to immediately produce the missing files.
 {¶ 4} Owens produced certain files to the sheriff's department upon demand. Appellant failed to produce any files and was subsequently placed on administrative leave. Officers obtained a warrant to search appellant's home. When they arrived at her home with the warrant, she consented to a search, which turned up the missing files.
 {¶ 5} Appellant was eventually indicted on four felony perjury charges by a special grand jury that had been convened to hear cases regarding corruption in Mahoning County. However, those charges were eventually dismissed.
 {¶ 6} Appellee held a pre-disciplinary hearing with appellant on August 24, 1998 to address allegations of disobeying a direct order, intentionally falsifying records, and abusing arrest and search warrant policies. The hearing officer found that appellant was guilty of insubordination and falsification. Consequently, Sheriff Chance terminated appellant's employment on August 28, 1998.
 {¶ 7} Other sheriff's department employees were also involved in the criminal investigation including Owens, Captain Jeff Chance, and Deputy Carmen Constantino. These deputies are all men. They were all also members of the MCU. They were all convicted of misdemeanors involving corruption in the department. After they were convicted, appellee began the disciplinary process against them. Appellee terminated them as well. However, they filed grievances and an arbitrator found that they were to be reinstated. Thus, appellee hired them back.
 {¶ 8} Appellant also filed a grievance contesting her termination. An arbitration hearing was held in accordance with the CBA. The arbitrator denied appellant's grievance.
 {¶ 9} Appellant next filed a charge with the Ohio Civil Rights Commission (OCRC) alleging that her termination was due to gender discrimination. The OCRC dismissed the charge. Subsequently, appellant filed a complaint for gender discrimination in the United States District Court. The District Court dismissed the complaint.
 {¶ 10} Appellant then filed a complaint in the trial court on December 2, 1999, asserting two causes of action: one for sex discrimination and the other for public policy tort. The trial court granted appellee's motion to dismiss/motion for summary judgment. Appellant filed an appeal from the decision. This court affirmed the trial court's decision as to the public policy tort claim and reversed as to the sex discrimination claim. Noday v. Mahoning Cty. Sheriff, 147 Ohio App.3d 38,768 N.E.2d 726, 2002-Ohio-609.
 {¶ 11} The case was remanded back to the trial court to proceed on appellant's sex discrimination claim. After discovery was completed, appellee moved for summary judgment. The trial court granted summary judgment to appellee finding that there were no genuine issues of material fact. Appellant filed a timely notice of appeal on October 29, 2003.
 {¶ 12} Appellant raises one assignment of error, which states:
 {¶ 13} "THE COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANT AND BY FAILING TO GRANT PARTIAL SUMMARY JUDGMENT IN FAVOR OF THE PLAINTIFF."
 {¶ 14} Appellant admits that she engaged in wrongdoing while employed by appellee. She argues however, that appellee did not administer discipline uniformly between her and other similarly situated male employees.
 {¶ 15} Appellant argues that she was similarly situated to Owens. She states that they held the same job title, had the same supervisor, shared the same duties, and their alleged misconduct was the same. Appellant further argues that the fact that she was investigated for her misconduct while Owens was not is enough to establish a prima facie showing of disparate treatment.
 {¶ 16} Appellant further asserts that while misconduct was alleged against her, Owens, Chance, and Constantino, she was the only one that appellee investigated internally in accordance with the CBA. She notes that while the other three were convicted of misdemeanors in relation to their misconduct in the sheriff's department, because appellee had not attempted to discipline them internally before their convictions, it could not do so afterwards. The result was that these three men remained employed.
 {¶ 17} Appellant also points to comments by Sheriff Chance, who allegedly referred to her as a "stupid bitch" and commented that women were liabilities. (Noday Affidavit).
 {¶ 18} In reviewing an award of summary judgment, appellate courts must apply a de novo standard of review. Cole v. Am. Indus. ResourcesCorp. (1998), 128 Ohio App.3d 546, 552, 715 N.E.2d 1179. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. State ex rel. Parsons v.Flemming (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377. A "material fact" depends on the substantive law of the claim being litigated. Hoyt,Inc. v. Gordon Assoc., Inc. (1995), 104 Ohio App.3d 598, 603,662 N.E.2d 1088, citing Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202.
 {¶ 19} R.C. 4112.02(A) provides it is an unlawful discriminatory practice "[f]or any employer, because of the * * * sex * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."
 {¶ 20} The court in Sutherland v. Nationwide Gen. Ins. Co. (1994),96 Ohio App.3d 793, 645 N.E.2d 1338, adopted a test for sex discrimination set out by the United States Supreme Court in McDonnellDouglas Corp. v. Green (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668
and Texas Dept. of Community Affairs v. Burdine (1981), 450 U.S. 248,101 S.Ct. 1089, 67 L.Ed.2d 207. The test involves burden shifting between the parties. The burden first lies with the plaintiff to demonstrate a prima facie case of disparate treatment. Sutherland,96 Ohio App.3d at 800, citing McDonnell Douglas, 411 U.S. at 802. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the disparate treatment. Id. If the defendant meets its burden, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the defendant's non-discriminatory reasons were not its true reasons, but were a pretext for discrimination. Sutherland,96 Ohio App.3d at 800, citing Burdine, 450 U.S. at 253.
 {¶ 21} To prove a prima facie case of discrimination, the plaintiff must show (1) she is a member of a protected class and (2) she was treated differently than similarly situated employees for the same conduct. Sutherland, 96 Ohio App.3d at 801. There is no dispute that appellant is a member of a protected class because she is a woman.
 {¶ 22} In order to be similarly situated the employees "`must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Howell v. Summit County, 9th Dist. No. 20958, 2002-Ohio-5257, quoting Mitchell v. Toledo Hosp.
(C.A.6, 1992), 964 F.2d 577, 583.
 {¶ 23} In this case, appellant was similarly situated at least to Owens. In her affidavit, appellant stated that she and Owens were partners, they reported to the same supervisor, and had the same duties and responsibilities. (Noday Affidavit). Appellant and Owens were also both accused of the same acts of misconduct, which consisted of falsifying matters during investigations. (Noday Affidavit). Appellant may have also been similarly situated to Constantino. He too was a member of the MCU, reported to the same supervisor, and held the rank of deputy, as did appellant. (Noday Affidavit). However, appellant was not similarly situated to Chance. While Chance was a member of the MCU, Chance was appellant's direct supervisor. (Noday Affidavit). Additionally, he held the rank of captain. (Noday Affidavit).
 {¶ 24} But whether appellant was similarly situated to Chance, or not, she has demonstrated that she was similarly situated to Owens and most likely to Constantino. Thus, we must move on to determine whether appellant was treated differently from these men. To do so, we must look at the disciplinary procedure.
 {¶ 25} The CBA sets out the disciplinary procedure as follows. Whenever the employer determines that an employee may be disciplined, a pre-disciplinary meeting shall be scheduled to give the employee an opportunity to explain the alleged misconduct. (Defendant's Exh. 2, p. 13). The employee shall be given written notice of the charges prior to the hearing. (Defendant's Exh. 2, p. 13). Disciplinary hearings will be conducted by a neutral hearing administrator. (Defendant's Exh. 2, p. 14). At the hearing, the employee may present witnesses and evidence to explain whether the alleged misconduct occurred. (Defendant's Exh. 2, p. 14). After the hearing, the hearing officer will prepare a written report concluding whether the alleged misconduct occurred. (Defendant's Exh. 2, p. 14). The employer will then decide what discipline, if any, is appropriate. (Defendant's Exh. 2, p. 14).
 {¶ 26} Appellant's disciplinary history is contained in her personnel file, Plaintiff's Exhibit 10.
 {¶ 27} The disciplinary process began on January 27, 1998, when appellee placed appellant on administrative leave with pay, pending an internal affairs investigation into allegations of misconduct involving possible violations of departmental rules of conduct. By letter dated August 19, 1998, appellee notified appellant of her pre-disciplinary hearing to be held on August 24. It listed the allegations of misconduct against her as: (1) disobeying a direct order; (2) intentionally falsifying records; and (3) abuse of arrest or search and seizure laws or policies.
 {¶ 28} The pre-disciplinary hearing was held as scheduled before a hearing officer. The hearing officer found the following. On January 27, 1998, Sheriff Chance ordered appellant to produce files related to certain search warrants as well as other MCU documents. Appellant refused and called her attorney. Because she refused to turn over the files, appellee obtained a search warrant for her house. Once the warrant was issued, appellant gave consent to search her house. The files were located in her house. Appellee then placed appellant on administrative leave. On January 30, 1998, appellant, in the presence of her attorney, discussed the issues with Detective Corporal Farina and Sheriff Chance. At that time, appellant admitted that certain search warrants included false and factually incorrect information concerning key issues of the affidavits and admitted that a certain narcotic buy report was false.
 {¶ 29} The hearing officer found that the allegations against appellant were true. He found that insubordination and falsification of public documents rose to the level of gross misconduct. He then noted that it was up to the Sheriff as to what disciplinary action to take.
 {¶ 30} Four days later, Sheriff Chance terminated appellant's employment. He based his decision on the hearing officer's finding of just cause and the conclusion that appellant disobeyed a direct order, willfully falsified affidavits used in searches and seizures, and abused the department's policies.
 {¶ 31} Appellant filed a grievance from her termination. A hearing was held before an arbitrator in May 1999. The arbitrator found that while the charge of disobeying a direct order was not proven, the other charges were. He also found that appellee violated certain provisions in the CBA dealing with notice. However, he noted that the damage from these violations was temporary and was cured by appellant's participation in her arbitration hearing. The arbitrator found that appellee had just cause to terminate appellant's employment and, therefore, denied the grievance.
 {¶ 32} Next, we must compare how Owens' discipline was handled. Owens' disciplinary history is contained in his personnel file, Plaintiff's Exhibit 6.
 {¶ 33} Owens was indicted on July 31, 1998 for tampering with evidence and dereliction of duty. On September 1, 1998, appellee placed Owens on administrative leave with pay. On June 22, Owens entered a guilty plea to a charge of falsification, a first-degree misdemeanor. He was sentenced in early September. Because his actions constituted dishonesty, were in violation of his sworn duties, and represented an extreme instance of gross misconduct, appellee terminated Owens' employment on September 28.
 {¶ 34} Appellee did not conduct an internal affairs investigation into Owens' conduct, as it did for appellant. Captain James Lewandowski stated that this was because Owens had pled guilty to a crime. (Lewandowski Depo. 21). Captain Lewandowski stated that he, the new Sheriff Randall Wellington, and the county personnel director decided to frame the disciplinary process around the fact that Owens (and Chance and Constantino) pled guilty to crimes. (Lewandowski Depo. 21, 26). They determined that they could just use the certified records from the court that the men had pled guilty as the sole basis for taking disciplinary action. (Lewandowski Depo. 21).
 {¶ 35} Owens filed a grievance regarding his termination claiming he was unjustly terminated in violation of the CBA. The grievance was heard before an arbitrator who found that appellee failed to conduct an independent investigation to determine exactly what Owens did to support the criminal charge. He noted that appellee simply relied on the court pleading. The arbitrator continued by noting that appellee "violated a fundamental principle of due process when it found [Owens] guilty of something it failed to investigate." He stated that while the conviction of a misdemeanor may be sufficient grounds for termination, it depends on what the employee did in committing the misdemeanor. The arbitrator found that in Owens' case, it was not clear exactly what he did. He concluded that by failing to conduct an administrative investigation to discern the nature and extent of Owens' activity, appellee failed to provide a quantum of proof necessary to sustain more than a C-4 violation (requiring only a 30-day suspension).
 {¶ 36} Interestingly, the arbitrator distinguished Owens' grievance from appellant's grievance. He noted that appellant's situation was significantly different because appellee investigated appellant's conduct and the investigation provided demonstrable proof of her actions. He also noted that appellant repeatedly falsified records over a seven-month period. In Owens' case, however, the arbitrator found that there was no evidence that Owens manufactured evidence or falsified records. There was only evidence that he omitted from an evidence record a bag of a white substance that he claimed was not contraband. Finally, he stated that had appellee investigated Owens and provided evidence that he actually planted a bag of white powder with the intent of having it appear as drug evidence or lied about his involvement, appellee's case against Owens would have been much stronger.
 {¶ 37} Consequently, the arbitrator sustained Owens' grievance and ordered that appellee convert Owens' termination into a 30-day suspension without pay and reinstate him to his former position.
 {¶ 38} Appellee appealed to the trial court from the arbitrator's award. However, the court confirmed the arbitrator's award and denied appellee's motion to vacate. Owens was then reinstated.
 {¶ 39} Additionally, we should compare how Constantino's discipline was handled. Constantino's disciplinary history is contained in his personnel file, Plaintiff's Exhibit 8.
 {¶ 40} Appellee placed Constantino on administrative leave with pay on July 31, 1998. At this time, Constantino was under indictment. His notice of administrative leave stated that he would remain on leave pending the outcome of the charges against him. Appellee then placed him on administrative leave without pay on September 11 pending the outcome of the indictment against him. On July 29, 1999, appellee again placed Constantino back on administrative leave with pay, this time as a result of his plea agreement.
 {¶ 41} Constantino was sentenced on October 5, 1999. That day, Captain Lewandowski gave him notice of his pre-disciplinary hearing. Appellee subsequently discharged Constantino for gross misconduct resulting from his guilty plea to attempted falsification.
 {¶ 42} Constantino filed a grievance and the matter was heard before an arbitrator. The arbitrator noted that appellee maintained Constantino had willfully and knowingly put the wrong numbers on a report to the state auditor concerning missing funds from the MCU. He found that Constantino had been called upon in a "rather strange, much after-the-fact manner" to account for money used in drugs buys. The arbitrator found that evidence indicated that Constantino made mistakes in accounting for the money. However, he noted that the way the sheriff's department tracked money was not very precise. The arbitrator also noted that Constantino gave unrebutted testimony that he was assured by Sheriff Chance that he would only incur a 30-day suspension if he pled guilty as he did. Additionally, the arbitrator found relevant the fact that while the rules and regulations of the sheriff's department listed the offense of intentionally falsifying records as a dischargeable violation, Constantino was never charged with that or any other specific violation of the rules and regulations. Thus, the arbitrator converted Constantino's termination to a 30-day suspension.
 {¶ 43} It is interesting to note that while the arbitrator reinstated Constantino, it was not on the basis of appellee's failure to conduct an internal investigation as was the case with Owens.
 {¶ 44} Based on how appellee handled appellant's, Owens', and Constantino's discipline, we cannot conclude that appellant was treated differently from the two men for the same conduct. Appellee placed appellant on administrative leave when she failed to obey an order from her superiors. Owens and Constantino were never accused of disobeying an order. Appellee placed them on administrative leave after they were indicted.
 {¶ 45} Furthermore, even if appellant had established a prima facie case of disparate treatment, appellee provided a legitimate, nondiscriminatory reason for the disparate treatment. There is no question that appellee wanted to rid its department of all of the employees who participated in corrupt activities under Sheriff Chance. Not only did it fire appellant, it also fired Owens and Constantino. And in Owens' case, once the arbitrator ordered appellee to reinstate him, appellee even appealed that decision in an attempt to keep Owens from returning to the sheriff's department. Appellant contends that because appellee conducted an internal investigation of her and not of Owens and Constantino, it discriminated against her. However, appellant overlooks the fact that both of these men pled guilty to crimes while she did not.
 {¶ 46} Appellee believed that because the men had already pled guilty to crimes involving their work duties, it did not need to conduct any further investigation into the allegations against them. Appellee proceeded with discipline against these men including terminating their employment. Although the arbitrator in the Owens case determined that appellee breached the CBA by failing to conduct an independent internal investigation into his case, at the time appellee fired Owens and Constantino it believed that the criminal investigation was sufficient. Thus, appellee provided a reasonable, gender-neutral explanation for why it did not investigate Owens and Constantino internally. Furthermore, appellee clearly wanted to terminate their employment as well as appellant's employment. Although it did not follow the disciplinary process set out in the CBA, as found by the arbitrator, in terminating Owens and Constantino, appellee nonetheless terminated them as it did appellant. Appellee demonstrated a reasonable explanation for why it handled Owens' and Constantino's discipline differently than appellant's discipline.
 {¶ 47} Given appellee's reasonable explanation, the burden shifted to appellant to demonstrate that the explanation was merely a pretext for discrimination. Appellant points to her affidavit for support in which she stated that Sheriff Chance called her a "stupid bitch," made a comment that women were liabilities, and stated that he had "one more woman than" he needed. (Noday Affidavit). Presuming that Sheriff Chance made these comments, as we are required to do, this does not rebut appellee's showing of a reasonable explanation for why it handled Owens' and Constantino's discipline differently than appellant's discipline. As explained above, appellee clearly wanted appellant, Owens, and Constantino terminated.
 {¶ 48} Therefore, the trial court properly found that there are no genuine issues of material fact to preclude summary judgment in appellee's favor. Accordingly, appellant's assignment of error is without merit.
 {¶ 49} For the reasons stated above, the trial court's judgment is hereby affirmed.
Vukovich, J., concurs Waite, J., concurs.