Heckert et al., Appellants, *v.* Patrick et al., Appellees.

[Cite as Heckert *v.* Patrick (1984), 15 Ohio St. 3d 402.]

(No. 84-337—Decided December 31, 1984.)

*Blakemore, Rosen, Meeker & Varian Co., L.P.A.,* and *Mr. Patrick J. Hart,* for appellants.

*Mr. James R. Unger,* prosecuting attorney, and *Mr. David M. Bridenstine,* for appellee board of county commissioners.

*Messrs. Vogelgesang, Howes, Lindamood & Brunn* and *Mr. Richard S. Milligan,* for appellee Weinman.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, *Mr. Stephen P. Samuels* and *Mr. John Alberty,* urging affirmance for *amici curiae* Ohio Department of Transportation and the Ohio County Engineers Assn.

HOLMES, J. Two issues are presented for review by this appeal with the initial query being one of first impression. We must initially determine the duty of care owed to the traveling public by a property owner whose land abuts a highway and contains growing trees with limbs overhanging the traveled portion of the roadway. The second question is whether a statutory or common-law duty exists in a board of county commissioners to remove a tree or its limbs which overhang a county road.

I

Generally, one may use his land as he sees fit, providing that his use does not invade the rights of others. In assessing the liability of a land-

owner for injuries to others, the law in this country, including Ohio, has in some respects viewed the passive use of one's land differently than an active use. A passive use includes the use and enjoyment of the natural growth on the land.

Accordingly, the Restatement of the Law of Torts sets forth the general rule that "[n]either a possessor of land, nor a vendor, lessor, or other transferor, is liable for physical harm caused to others outside of the land by a natural condition of the land." 2 Restatement of the Law 2d, Torts (1965) 258, Section 363(1). This is contrasted with the principle applied to structures, or objects placed upon the property by owners which occasion an injury to others outside the land. Section 364 of the Restatement of Torts 2d, *supra,* at 259, states that a possessor of land is subject to liability to others outside the land for physical harm caused by a structure or artificial construction on the land which the possessor realizes or should realize will involve an unreasonable risk of harm. A typical example of such artificial structure is a sign which overhangs a street or sidewalk that falls, thereby causing injuries to passing pedestrians. See Annotation (1957), 55 A.L.R. 2d 178, 190; 39 American Jurisprudence 2d (1968), Highways, Streets and Bridges, Section 453, and cases cited therein.

There is an exception to the general rule, however, concerning the duty of a property owner relating to the natural condition of and growth upon his land. This exception relates to growing trees with limbs overhanging a public street or highway. The law encompassing this exception varies rather markedly throughout the United States.[1] However, it is generally stated that an owner of land abutting a highway may be held liable on negligence principles under certain circumstances for injuries or damages resulting from a tree or limb falling onto the highway from such property. *Hensley* v. *Montgomery Cty.* (1975), 25 Md. App. 361, 334 A. 2d 542; *Carver* v. *Salt River Valley Water Users' Assn.* (1969), 104 Ariz. 513, 456 P. 2d 371; *Albin* v. *Natl. Bank of Commerce* (1962), 60 Wash. 2d 745, 375 P. 2d 487; *Lemon* v. *Edwards* (Ky. 1961), 344 S.W. 2d 822; and *Hay* v. *Norwalk Lodge No. 730, B.P.O.E.* (1951), 92 Ohio App. 14 [49 O.O. 189].

Section 363(2) of the Restatement of Torts 2d, *supra,* at 258, specifically provides that a possessor of land in an *urban* area is subject to liability to persons using a public highway for physical harm arising from the condition of trees near the highway. The use of the term "urban" in this section of the Restatement introduces yet a further variation in the application of the rules concerning a property owner's duty or responsibility. In addition, a caveat following Section 363(2) states that the drafters express no opinion as to whether the rule would apply to a possessor of land in a *rural* area. Accordingly, there appears to have developed a distinction throughout the United States that there is a lesser standard of

---

[1] See Annotation (1979), 94 A.L.R. 3d 1160.

care with reference to rural, farm, timber, or little used land as opposed to strictly urban property.[2]

In the main, the cases applying the distinction often state that the urban owner has a duty of reasonable care relative to the tree, including inspection to make sure that it is safe. The duty placed upon the urban landowner, who has only a few trees, is not a heavy burden. This is in contrast to the rural landowner who may have trees of forest dimensions which would impose a duty of immense proportions, and constitute an onerous burden. *Hensley, supra,* at 545.

The leading case in Ohio discussing the urban-rural distinction is *Hay, supra.* In that case, the Court of Appeals for Huron County held as follows:

"Although there is no duty imposed upon the owner of property abutting a rural highway to inspect growing trees adjacent thereto or to ascertain defects which may result in injury to a traveler on the highway, an owner having knowledge, actual or constructive, of a patently defective condition of a tree which may result in injury to a traveler must exercise reasonable care to prevent harm to a person lawfully using the highway from the falling of such tree or its branches." *Id.* at paragraph three of the syllabus.

It should be noted that where negligence revolves around the question of the existence of a hazard or defect, the legal principle prevails that notice, either actual or constructive, of such hazard or defect is a prerequisite to the duty of reasonable care. See 54 Ohio Jurisprudence 3d (1984) 540, Highways and Streets, Section 416, and cases cited therein. Furthermore, constructive notice may be imputed to the one sought to be held responsible if the hazard or defect complained of is deemed patent.

We adopt the law set forth in the *Hay* opinion inclusive of the distinction between the rural and urban abutting owners of property. If the danger is apparent to a rural property owner, he must take precautions to protect the traveling public. This theory is the most reasonable when viewing all of the pertinent state policy considerations. In so doing, we recognize that the distinction becomes a more difficult application with the rapid development of our suburban areas, and the increased amount of vehicular traffic in what might be considered the gray areas lying somewhere between the city and the more remote farm or rural area.

---

[2] The rationale for the distinction between the duty applied to the rural property owner in contrast to the urban owner has been set forth by Deans Prosser and Keeton:

"The rule of non-liability for natural conditions was obviously a practical necessity in the early days, when land was very largely in a primitive state. It remains to a considerable extent a necessity in rural communities, where the burden of inspecting and improving the land is likely to be entirely disproportionate not only to any threatened harm but even to the value of the land itself. But it is scarcely suited to cities, to say that a landowner may escape all liability for serious damage to his neighbors, merely by allowing nature to take its course." Prosser & Keeton, Law of Torts (5 Ed. 1984) 391, Section 57.

However, the location of the highway, its size and type, as well as the number of people utilizing it, are factors to be considered by the trier of fact in determining the law to be applied.

Applying the law to the case *sub judice,* we find that the accident took place in a rural area and the trial court was warranted in finding that reasonable minds could come to but one conclusion when confronted with this issue. Appellee Weinman did not have actual or constructive notice of the weakened condition of the tree. While there was evidence by way of the horticulturist's affidavit that the tree had been dying for some time, this observation was made of the tree's interior after the limb had fallen. This affidavit provides no evidence that the condition could have been observed prior to the accident.

Therefore, we find no proof that the weakened condition was patent or that Weinman had occasion to notice such defects. Accordingly, we affirm the court of appeals on this issue.

## II

In *Zents* v. *Bd. of Commrs.* (1984), 9 Ohio St. 3d 204, a majority of this court held that counties are subject to the same rules as private persons under common-law tort principles. Therefore, we must address the issue concerning the commissioners' liability in two different respects: first, under common-law tort standards and, second, pursuant to any statutory duty placed on them by the General Assembly.

With the abrogation of sovereign immunity, a plaintiff suing the government in tort must establish the necessary elements thereof. *Strunk* v. *Dayton Power & Light Co.* (1983), 6 Ohio St. 3d 429. Based upon the law adopted above, we find no evidence in the record which would establish that any county employees had actual or constructive knowledge of the weakened condition of the tree in question. Therefore, the commissioners have not breached any duty owed to appellants.

The relevant statutory duty of the county commissioners is found within R.C. 305.12, which places liability upon the commissioners for the failure to keep county roads in repair. This provision reads in part:

"* * * The board shall be liable, in its official capacity, for damages received by reason of its negligence or carelessness in not keeping any such road * * * in proper repair * * *."

A review of case law decided under R.C. 305.12 and its predecessor, G.C. 2408, reveals two recognized principles. First, the intent of the General Asembly was to place a duty on the commissioners only in matters concerning either the deterioration or disassembly of county roads and bridges. See *Lengyel* v. *Brandmiller* (1942), 139 Ohio St. 478 [22 O.O. 521] (liable for bridge collapse); *Starling* v. *Bd. of Commrs.* (1935), 53 Ohio App. 293 [7 O.O. 97] (liable for rut in berm of road); *Whitney* v. *Niehaus* (1915), 4 Ohio App. 208 (liable for trench in roadway); *Guernsey County Commrs.* v. *Black* (1911), 24 Ohio C.D. 164, affirmed (1913), 88 Ohio St. 587 (liable

for hole in berm of roadway); *Daus* v. *Commrs.* (1927), 6 Ohio Law Abs. 418 (statutory duty does not extend to rock ledge upon which bridge abutment rests); *Spronk* v. *Campbell* (C.P. 1940), 31 Ohio Law Abs. 597 [17 O.O. 540] (not liable for injuries resulting from collision with parked truck on roadway after dark). Second, liability will not be imposed under the purview of the statute when the obstructions or interferences are unrelated to the conditions of the roadway. See *Western Pa. Natl. Bank* v. *Ross* (C.A.6, 1965), 345 F. 2d 525 [33 O.O.2d 265] (no liability for tree limbs obscuring view of stop sign); *Ebert* v. *Commrs. of Pickaway County* (1907), 75 Ohio St. 474 (not liable for piles of stone placed on roadside); *Allison* v. *Bd. of County Commrs.* (App. 1935), 19 Ohio Law Abs. 74 (no liability for bridge narrower than roadway). In addition, this court most recently held that snow removal is not encompassed within R.C. 305.12. *Ditmyer* v. *Bd. of County Commrs.* (1980), 64 Ohio St. 2d 146 [18 O.O.3d 372].

While it is clear that the commissioners do not have a statutory duty pursuant to R.C. 305.12 to trim or remove tree limbs which overhang a county road, appellants focus attention on cases decided under R.C. 723.01[3] in an effort to place liability on the commissioners. These cases, however, are not applicable here. R.C. 723.01 contains the language "and free from nuisance," which has been interpreted by this court to include more than just conditions of the roadway. The failure of the General Assembly to place this language in R.C. 305.12 clearly indicates its intention not to impose liability on the commissioners in matters unrelated to actual roadway conditions.

Therefore, we hold that a board of county commissioners is not liable under R.C. 305.12 for damages caused by the falling of a tree or its branches onto a county roadway. Accordingly, the judgment of the court of appeals is affirmed on this issue.

*Judgment affirmed.*

W. BROWN, SWEENEY and LOCHER, JJ., concur.

CELEBREZZE, C.J., C. BROWN and J. P. CELEBREZZE, JJ., dissent.

CLIFFORD F. BROWN, J., dissenting. The granting of summary judgment by the trial court in this case was reversible error. In order for the trial court to enter such judgment, it must have resolved that all evidence construed most favorably for the plaintiffs left no genuine question of

---

[3] R.C. 723.01 states in pertinent part:

"Municipal corporations shall have special power to regulate the use of the streets. The legislative authority of such municipal corporation shall have the care, supervision, and control of public highways, [and] streets * * * within the municipal corporation, and shall cause them to be kept open, in repair, and free from nuisance."

material fact that the defendants did not have constructive notice of the deteriorated condition of the tree from which the limb fell, causing the injuries of the plaintiffs.

The court correctly cites *Hay v. Norwalk Lodge No. 730, B.P.O.E.* (1951), 92 Ohio App. 14, for the proposition that constructive notice can be imputed to the defendants in this case only if the hazard was patent. The court then completely ignores the facts before it in the record. Plaintiffs offered an affidavit of a claimed tree expert, Thomas Riccardi, in opposition to the defendants' motion for summary judgment. The expert stated:

"7) Examination of the tree demonstrated that some of the limbs of the tree had grown large and rotten, and extended over the traveled portion of Sherman Church Road.

"8) Further, the deteriorated condition of the tree was *visible and apparent;* it was apparent that several limbs had already separated and fallen from the tree, showing the decay of the interior of the tree.

"9) In my opinion, this tree has been decaying and has been in a stressful state for several years prior to July 10, 1982 [the date of plaintiffs' accident]." (Emphasis added.)

In Paragraph 8 of the expert's affidavit, he clearly states that the deterioration of the tree was visible and apparent, and that this apparent condition existed before the date of plaintiffs' accident on July 10, 1982, because before the date of such accident, as stated in that affidavit, "several limbs had already * * * fallen from the tree, showing the decay of the interior of the tree." That this apparent condition existed before July 10, 1982, is further supplemented by Paragraph 9 of the affidavit which states that "this tree has been decaying and has been in a stressful state for several years prior to July 10, 1982." This clearly refutes the basis of the majority opinion, that the evidence by way of the horticulturist's affidavit that the tree had been dying for some time, was an "observation [that] was made of the tree's interior after the limb had fallen." On the contrary, the horticulturist's opinion concerning decay was not based upon his observation of the tree's interior after the limb had fallen on plaintiffs, but clearly stated it was based upon several other limbs that had separated and fallen from the tree, "showing the decay of the interior of the tree." This affidavit likewise refutes the majority opinion's statement that "[t]his affidavit provides no evidence that the condition could have been observed prior to the accident." Likewise it refutes the statement in the majority opinion that "we find no proof that the weakened condition was patent or that Weinman had occasion to notice such defects." If the foregoing analysis of the affidavit does not raise a question of material fact that the weakened condition of the tree was patent or that Weinman had occasion to notice such defects before the accident which overcomes a motion for summary judgment, then nothing could.

The *Hay* opinion found that a landowner is responsible for injuries to travelers which result from apparent dangers on his or her property which

the owner ignores. At the barest minimum, the facts in dispute in this case create a genuine issue which should be given to a jury for determination as to whether the defendant landowner knew or should have known of the danger this tree posed to passers-by. Such controversy makes the entry of summary judgment as to the landowner error.

As for the county commissioners, since the abrogation of sovereign immunity for counties in *Zents* v. *Bd. of Commrs.* (1984), 9 Ohio St. 3d 204, they are subject to the same common-law duties as a private rural landowner. As a part of their recognition of this duty, the commissioners had the county road supervisor patrol the county road in question looking for hazards and defects. It is, therefore, a question of fact as to whether the commissioners knew or should have known of the deteriorated condition of this tree which was situated so close to the roadway.

Finding questions of material fact upon which reasonable minds could differ, I dissent and would reverse the judgment of the court of appeals.

CELEBREZZE, C.J., and J. P. CELEBREZZE, J., concur in the foregoing dissenting opinion.