SANDERBECK, APPELLEE, *v.* COUNTY OF MEDINA ET AL., APPELLANTS.

[Cite as *Sanderbeck v. Medina Cty.,* 130 Ohio St.3d 175, 2011-Ohio-4676.]

*Appeal dismissed as having been improvidently accepted.*

(No. 2010-1654—Submitted June 8, 2011—Decided September 20, 2011.)

APPEAL from the Court of Appeals for Medina County, No. 09CA0051-M,

2010-Ohio-3659.

_____

{¶ 1} The cause is dismissed, sua sponte, as having been improvidently accepted.

O'CONNOR, C.J., and PFEIFER, CUPP, and MCGEE BROWN, JJ., concur.

LUNDBERG STRATTON, O'DONNELL, and LANZINGER, JJ., dissent.

_____

**O'DONNELL, J., dissenting.**

{¶ 2} This case presents a question of great significance that affects political subdivisions and their residents across this state: whether a political subdivision may be deprived of its sovereign immunity and forced to defend against an allegation that a roadway it maintains contributed to an accident based only on the opinion of an expert that the roadway lacked adequate skid resistance.

{¶ 3} The decision of the court of appeals in this case subjects political subdivisions to potential liability for automobile accidents that occur within their territorial limits, based on nothing more than an expert's claim that the road is out of repair because its coefficient of friction falls below an abstract threshold. Because that decision expands the exception to political-subdivision immunity for the negligent failure to maintain a roadway beyond that intended by the General Assembly and potentially imposes on political subdivisions a duty to defend in cases arising out of accidents where skid resistance becomes an issue, and

because an issue of this importance deserves a decision on the merits to clarify the law for Ohio appellate courts, I respectfully dissent from the majority's decision to dismiss this appeal as having been improvidently accepted.

{¶ 4} On March 4, 2006, Michelle Sanderbeck rode in the back seat of a vehicle driven at a high rate of speed by 16-year-old Steven W., as it approached an S curve on East Smith Road in Medina County. The driver lost control of the vehicle, crossed the eastbound lane of traffic, left the road, and drove into a drainage ditch, flipping the vehicle onto its top and coming to rest on a stone retaining wall. Michelle died in that crash.

{¶ 5} Raymond Sanderbeck (individually and as administrator of Michelle's estate) filed a wrongful-death action against Medina County, asserting that it had negligently, recklessly, and willfully and wantonly failed to keep East Smith Road in repair, proximately causing his daughter's death.

{¶ 6} The county asserted its political-subdivision immunity, but Sanderbeck contended that an exception to the county's immunity applied pursuant to R.C. 2744.02(B)(3), which provides that "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair." In support of his position, Sanderbeck relied on the expert opinion of Richard L. Stanford II, who opined that at the time of the crash, "East Smith Road was in disrepair and a contributing factor in the accident that claimed Michelle Sanderbeck's life."

{¶ 7} Stanford explained that roadway curves have a characteristic known as "critical speed," which is "the speed at which the tires of a turning vehicle attempting to negotiate the curve will begin to sideslip, often resulting in a loss of control of the vehicle." Stanford further testified that roads also have a "skid number" based on their coefficient of friction that relates to their skid resistance, and he asserted that a high-volume roadway like East Smith Road is considered out of repair if it has a skid number of 38 or less. He therefore believed that the

"worn out" condition of East Smith Road contributed to the accident because, at the time of the crash, the critical speed of the curve was 45 m.p.h. or less and the road had a skid number of only 25.

{¶ 8} The trial court denied the county's motion for summary judgment, and the Ninth District upheld that decision, holding that the testimony of Sanderbeck's expert established a genuine issue of material fact regarding the claim that the county had failed to keep the road in repair.

{¶ 9} On appeal, the county maintains that Sanderbeck presented no evidence that it had failed to keep the road in repair, because his expert had no knowledge of the skid resistance of the road at the time of its design or construction. Sanderbeck responds that Stanford's testimony regarding the insufficient skid resistance of the road at the time of the accident demonstrates that the county failed to maintain it in a safe condition.

{¶ 10} This case concerns an issue of public and great general interest: whether a political subdivision may be deprived of a benefit of its sovereign immunity based only on the opinion of an expert that the skid resistance of the road fell below a certain theoretical threshold level at the time of an accident, without knowing the skid resistance of the road at the time of its construction.

{¶ 11} R.C. 2744.02(A)(1) generally affords political subdivisions immunity from tort actions, providing that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.01(C)(2)(e) specifically defines the maintenance and repair of roads to be a governmental function.

{¶ 12} Nonetheless, R.C. 2744.02(B)(3) establishes an exception to this immunity: "[P]olitical subdivisions are liable for injury, death, or loss to person or property caused by their *negligent failure to keep public roads in repair* and other

negligent failure to remove obstructions from public roads * * *." (Emphasis added.)

{¶ 13} In my view, the testimony of an expert regarding the adequacy of a roadway's skid resistance at the time of an accident does not without more establish that the road is out of repair for purposes of R.C. 2744.02(B)(3). Our duty in construing statutes is to determine and give effect to the intent of the General Assembly in enacting them. *Fisher v. Hasenjager,* 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 20. And as we explained in *Symmes Twp. Bd. of Trustees v. Smyth* (2000), 87 Ohio St.3d 549, 553, 721 N.E.2d 1057, "[w]hen the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply the rules of statutory interpretation."

{¶ 14} R.C. 2744.02(B)(3) is unambiguous, and we need only apply it here. The plain meaning of the word "repair" is "to put back in good condition after damage [or] decay." Webster's New World College Dictionary (4th Ed.2000) 1214. Thus, in order for a claimant to establish that a political subdivision has failed to keep a public road in repair, there must be evidence presented regarding the condition of the roadway prior to its alleged damage or deterioration in order to show that the duty to maintain a public road has been violated.

{¶ 15} It is recognized that a political subdivision is immune from suit for the design and construction of a roadway, see *Haynes v. Franklin*, 95 Ohio St.3d 344, 2002-Ohio-2334, 767 N.E.2d 1146, ¶18 (construing analogous predecessor statute), but not for failure to maintain a roadway in good repair. R.C. 2744.02(B)(3).

{¶ 16} Here, Sanderbeck presented expert testimony regarding the skid resistance of the road at the time of the accident, but he presented no evidence establishing its skid resistance at the time of design and construction. In my view,

testing regarding the skid resistance of the road at the time of the accident fails to establish a genuine issue of material fact regarding his claim that Medina County is liable for negligent failure to keep public roads in repair.

{¶ 17} The General Assembly, as the final arbiter of public policy in Ohio, has intended "to limit political-subdivision liability for roadway injuries and deaths," *Howard v. Miami Twp. Fire Div.*, 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, ¶ 29, with a purpose to preserve " 'the fiscal integrity of political subdivisions.' " *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 23, quoting *Wilson v. Stark Cty. Dept. of Human Servs.* (1994), 70 Ohio St.3d 450, 453, 639 N.E.2d 105; see also *Rankin v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 118 Ohio St.3d 392, 2008-Ohio-2567, 889 N.E.2d 521, ¶ 34. The court of appeals' decision in this case frustrates that policy and imposes on political subdivisions the duty to defend in numerous cases raising claims similar to those presented here, exposing them to potential liability for all accidents occurring on roads within their territorial limits. I would prefer to decide the issues here, review the evidence to determine whether the county breached its duty to keep the roadway in repair, and further consider the immunity granted to political subdivisions and the application of R.C. Chapter 2744 to the facts of this case, given the other attendant factors that could have contributed to this accident.

{¶ 18} Because the majority dismisses this appeal as having been improvidently accepted without reaching its merits, I respectfully dissent.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

_____

**LANZINGER, J., dissenting.**

{¶ 19} I respectfully dissent from the majority's decision to dismiss this appeal as having been improvidently accepted. We have been given the opportunity to set forth parameters with respect to the sufficiency of evidence

needed to create a material issue of fact on whether a road is kept "in repair," thus subjecting a political subdivision to the possibility of liability under R.C. 2744.02(B)(3). This is an important question for all political subdivisions throughout the state and should be answered.

{¶ 20} Because I believe that the evidence offered by appellee, Raymond J. Sanderbeck, in opposition to the motion for summary judgment filed by Medina County and the Medina County Board of Commissioners ("the county appellants") is insufficient to raise an issue over the assertion that the county appellants negligently failed to keep the road in question in repair, appellee is unable to establish an exception to R.C. 2744.02(A)(1)'s general grant of sovereign immunity. I would hold that the county appellants are entitled to summary judgment on the grounds of immunity and accordingly would reverse the decision of the court of appeals.

## I. Case Background

{¶ 21} This case arises from a tragic, single-car collision that occurred on March 4, 2006, in Medina County, resulting in the death of Michelle L. Sanderbeck. The driver, who was exceeding the posted advisory speed limit of 25 miles per hour on East Smith Road, had failed to negotiate an S curve and overturned the car into an embankment.

{¶ 22} Sanderbeck filed this wrongful-death action individually and as administrator of his daughter's estate against the county appellants, asserting that they had negligently, recklessly, and willfully and wantonly failed to perform the necessary care, supervision, and control in the maintenance and repair of East Smith Road, proximately causing his daughter's death.

{¶ 23} The county appellants filed a motion for summary judgment, arguing that they were entitled to statutory immunity under R.C. 2744.02(A)(1). The trial court denied summary judgment after finding that questions of fact

remained on whether the road had been in repair and whether the county appellants had been required to install a guardrail at the site of the accident.

**{¶ 24}** The Ninth District Court of Appeals affirmed the judgment in part and reversed it in part. The court of appeals held first that Sanderbeck's expert's affidavit and deposition testimony that East Smith Road was in disrepair at the time of the accident constituted evidence sufficient to prevent summary judgment in the county appellants' favor. 2010-Ohio-3659, at ¶ 12. The appellate court also held, however, that Sanderbeck failed to show a duty on the part of the county and board to erect a guardrail, because the drainage ditch running parallel to East Smith Road and under a driveway was not a "culvert" within the meaning of R.C. 5591.36. Id. at ¶ 17. Thus, the trial court's order denying summary judgment was affirmed on the repair issue but was reversed on the guardrail issue.

**{¶ 25}** We accepted the first proposition of law presented by the county appellants on their discretionary appeal: "Under R.C. 2744.02(B)(3), the skid resistance of a road does not raise a repair issue when no evidence exists regarding the skid resistance of the road at the time of design or construction. (R.C. 2744.02(B)(3) interpreted and applied.)" 127 Ohio St.3d 1502, 2011-Ohio-19, 939 N.E.2d 1266. We are asked to interpret the meaning of the statute that sets forth the duty of the county appellants to repair roads and the evidence needed to create a material issue of fact on the liability of political subdivisions under R.C. 2744.02(B)(3). As part of this analysis, we must determine whether a political subdivision may be deprived of the benefit of its sovereign immunity based only on the opinion of an expert who, without knowing the skid resistance at the time of the road's construction, asserted that the skid resistance of the road was below a certain theoretical threshold level at the time of an accident.

## II. Analysis

### A. *Political-Subdivision Tort Immunity under R.C. Chapter 2744*

**{¶ 26}** The Political-Subdivision Tort Liability Act, R.C. Chapter 2744, was enacted in response to the judicial abolishment of common-law sovereign immunity for political subdivisions in *Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749. The statutory scheme requires a three-tiered analysis. R.C. 2744.02(A)(1) provides that a political subdivision is generally not liable for damages for injury, death, or loss to persons or property incurred in connection with the performance of a governmental or proprietary function of the political subdivision. R.C. 2744.02(B) lists several exceptions to the general grant of sovereign immunity. Even if an exception applies under R.C. 2744.02(B), however, immunity may be restored if a political subdivision can assert one of the defenses to liability found in R.C. 2744.03.

**{¶ 27}** "Political subdivision" means "a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state." R.C. 2744.01(F). County appellants fall squarely within this definition of "political subdivision," while the term "governmental function" specifically includes "the maintenance and repair" of roads. R.C. 2744.01(C)(2)(e).

**{¶ 28}** But there are several exceptions to the general grant of sovereign immunity, as listed by R.C. 2744.02(B). Sanderbeck relies on R.C. 2744.02(B)(3), which provides: "[P]olitical subdivisions are liable for * * * death * * * caused by their negligent failure to keep public roads in repair * * *." In responding to the county appellants' motion for summary judgment, Sanderbeck asserted that a material question of fact existed on whether the county appellants had kept East Smith Road "in repair" within the meaning of R.C. 2744.02(B)(3).

*B. Scope of R.C. 2744.02(B).*

{¶ 29} For their part, the county appellants argue that "in repair" as used in R.C. 2744.02(B)(3) refers to "maintaining a road's condition after construction or reconstruction." They assert that the Ninth District Court of Appeals failed to properly interpret the statute when it held that the testimony of Sanderbeck's expert was sufficient to create a genuine issue of material fact because the expert's testimony at best indicated a design flaw, rather than a failure to keep the road in repair. Sanderbeck responds that the lower courts correctly determined that the expert's testimony, along with other evidence depicting the roadway, created a genuine issue on whether the county appellants had kept the road in repair.

{¶ 30} To prevail in their motion for summary judgment, the county appellants must show that there is no genuine issue of *material* fact in this case. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 294, 662 N.E.2d 264. Sanderbeck cannot avoid summary judgment merely by showing that some facts are in dispute. In this case, R.C. 2744.02(B)(3) provides the possibility of an exception to a political subdivision's immunity from tort liability when the political subdivision has failed to keep public roads in repair. The material issue in this case, then, is whether the county appellants failed in their duty to keep the road in repair. To answer this question, one must first determine the definition of the phrase "in repair," which is undefined in R.C. Chapter 2744.

{¶ 31} I agree with the county appellants that the phrase "in repair" refers to a public subdivision's duty to maintain a road's condition after construction or reconstruction. In a case decided before R.C. Chapter 2744 was enacted, we stated that a statute setting forth a duty of county commissioners to keep roads "in proper repair" created "a duty on the commissioners only in matters concerning either the deterioration or disassembly of county roads and bridges." *Heckert v. Patrick* (1984), 15 Ohio St.3d 402, 406, 15 OBR 516, 473 N.E.2d 1204. Given

the broad grant of sovereign immunity in R.C. 2744.02(A)(1), however, we cannot read R.C. 2744.02(B)(3) as allowing a claimant to establish that an exception to immunity exists by merely asserting that a road does not have a certain skid-resistance number. To establish a genuine issue of material fact on whether the road lacked appropriate maintenance, i.e., was out of repair, evidence must be adduced to prove that the skid resistance of the roadway had deteriorated from an earlier condition. Only in this manner can a claimant demonstrate that the lack of adequate skid resistance is attributable to the failure to maintain a public roadway.

     *C. Insufficient evidence of "failure to keep public roads in repair"*

{¶ 32} Sanderbeck failed to submit evidence sufficient to create a genuine issue of material fact on this crucial point.

{¶ 33} Sanderbeck relied on the expert opinion of Richard L. Stanford II, who gave an opinion that at the time of the crash, "East Smith Road was in disrepair and a contributing factor in the accident that claimed Michelle Sanderbeck's life." Stanford stated that roadway curves have a characteristic known as "critical speed," which is "the speed at which the tires of a turning vehicle attempting to negotiate the curve will begin to sideslip, often resulting in a loss of control of the vehicle." Stanford further testified that roads also have a "skid number" based on their coefficient of friction that relates to their skid resistance, and he asserted that a high-volume roadway like East Smith Road is considered out of repair if it has a skid number of 38 or less. He therefore believed that the "worn out" condition of East Smith Road contributed to the accident because, at the time of the crash, the critical speed of the curve was 45 miles per hour or less and the road had a skid number of only 25.

{¶ 34} In summary, the evidence Sanderbeck provided was that (1) the "skid number" of the roadway is a calculation that determines the deterioration of the pavement friction characteristics of the road or, in other words, how

susceptible a roadway is to having cars slip off the roadway; (2) a skid number of 25 was calculated for the portion of East Smith Road where the accident occurred; (3) anything less than a skid number of 38 on a high-volume road would qualify as "disrepaired pavement"; (4) the "critical speed" for a curve in a roadway is the speed at which the tires of a turning vehicle will begin to slip, potentially causing a loss of control of the vehicle; (5) Stanford's opinion was that the critical speed of East Smith Road at the time of the accident was at or below the posted speed limit of 45 miles per hour; (6) East Smith Road was "in disrepair";[1] and (7) the condition of East Smith Road was a contributing factor in the accident that resulted in Michelle Sanderbeck's death.

{¶ 35} While appellee argues that Stanford's testimony creates a genuine issue of material fact, there was no evidence offered that established that the roadway on the date of the accident had deteriorated from an earlier standard due to the county appellants' lack of maintenance.

{¶ 36} The difference between a road containing a design defect and a road that has fallen into disrepair is of critical importance in this case. R.C. 2744.02(B)(3) specifically provides that a political subdivision may be liable in tort for negligent failure to keep public roads in repair. But we have held that allegations involving design flaws "involve discretionary functions as provided in R.C. 2744.03(A)(3) and (5)" and that "the defenses found in R.C. 2744.03(A)(3) and (5) preclude the imposition of liability on a political subdivision for any acts or omissions related to these discretionary functions." *Franks v. Lopez* (1994), 69 Ohio St.3d 345, 349-350, 632 N.E.2d 502. We have stated further that a "plaintiff must establish that the *cause of* the condition was other than a decision regarding

---

1. Stanford's statement that the road was in disrepair is not based on supporting facts. "It is improper for an expert's affidavit to set forth conclusory statements and legal conclusions without sufficient supporting facts." *Douglass v. Salem Community Hosp.,* 153 Ohio App.3d 350, 2003-Ohio-4006, 794 N.E.2d 107, at ¶ 28.

design and construction" to overcome the hurdle of a political subdivision's immunity. (Emphasis sic.) *Haynes v. Franklin*, 95 Ohio St.3d 344, 348, 2002-Ohio-2334, 767 N.E.2d 1146, ¶ 18. Although both cases construed a previous version of R.C. 2744.02(B)(3) that contained the repealed concept of "nuisance," the principle remains under the current version of the statute: a political subdivision is immune from liability for design or construction defects because decisions on those matters involve discretion on the part of employees of a political subdivision.

{¶ 37} Sanderbeck also relies upon photographs attached to the county appellants' motion for summary judgment that depict the road the day after the accident occurred, asserting that they indicate spalling, i.e., physical deterioration of the pavement, and create a genuine issue of material fact on whether the road was in repair for purposes of R.C. 2744.02(B)(3). Yet as with the skid number and critical speed, the trial court was incorrect in stating that a material issue of fact on repair was created by these photographs, for no photographs were admitted showing the condition of the road beforehand for a basis of comparison.[2] Furthermore, Sanderbeck's assertion that his expert relied upon the photographs in forming his opinion that the road was in disrepair is contradicted by Stanford's deposition statement that while the pictures depicted deterioration in the road, that was not the "key point," and "The key point is we have a measurement of the friction characteristics which tell us that it was worn out or out of repair."

{¶ 38} Viewed as a whole and in a light most favorable to appellee, the testimony of Stanford relates only to a potential flaw in the road's design or construction rather than the failure to adequately maintain the road. Stanford

---

2. Appellants assert that the photographs do not show that the road had deteriorated, while appellee argues that the photographs provide evidence of deterioration. Because these photographs cannot constitute evidence of a failure to keep the road in repair without photographs showing the road while it was alleged to be in repair, I would not address the issue of whether the photographs depicted deterioration.

stated his opinion that at the time of the accident, the road's skid number fell below accepted standards and that the critical speed of the road was below the posted speed limit. Each of these measurements, however, concerns the design or construction of the road. Because the county appellants are immune from liability for faulty design or construction, this evidence is not sufficient to defeat the county appellants' motion for summary judgment.

{¶ 39} Under R.C. 2744.02(B)(3), the skid resistance and critical speed of a road do not raise a repair issue when no evidence exists suggesting that the road had deteriorated from an earlier standard due to a lack of maintenance. I would hold that the county appellants are entitled to immunity as a matter of law.

### III. Conclusion

{¶ 40} Because I conclude that appellee, Raymond J. Sanderbeck, failed to offer sufficient evidence to raise a genuine issue of material fact on the issue of the political-subdivision immunity of Medina County and the Medina County commissioners under R.C. 2744.02(B)(3), I dissent from the majority's decision to dismiss this case as having been improvidently accepted. I would instead reverse the decision of the court of appeals.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

_____

Mannion & Gray Co., L.P.A., and Bradley J. Barmen, for appellee.

Mazanec, Raskin & Ryder Co., L.P.A., John T. McLandrich, and Frank H. Scialdone, for appellants.

Schottenstein, Zox & Dunn Co., L.P.A., Stephen L. Byron, and Stephen J. Smith; and John Gotherman, urging reversal for amicus curiae Ohio Municipal League.

Isaac, Brant, Ledman & Teetor, L.L.P., Mark Landes, and Derek L. Haggerty, urging reversal for amici curiae County Commissioners Association of

Ohio, Ohio Township Association, Lorain County Township Association, County Engineers Association of Ohio, and Coalition of Large Ohio Urban Townships.

Davis & Young and Richard M. Garner, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.

_____