[Cite as *Keller v. Carroll Cty. Bd. of Commrs.*, 2022-Ohio-3526.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## CARROLL COUNTY

JAMES R. KELLER,

Plaintiff-Appellant,

v.

CARROLL COUNTY BOARD
OF COMMISSIONERS

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 CA 0952**

---

Civil Appeal from the
Court of Common Pleas of Carroll County, Ohio
Case No. 2020 CVC 29553

**BEFORE:**
Carol Ann Robb, Gene Donofrio, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Anthony E. Brown*, *Atty. Daniel D. Eisenbrei,* Milligan Pusateri Co., LPA, 4684 Douglas Circle - P.O. Box 35459, Canton, Ohio 44735 and *Atty. Elizabeth A. Burick,* Elizabeth Burick Co., LPA, 1428 Market Avenue North, Canton, Ohio 44714 for Plaintiff-Appellant and

*Atty. John T. McLandrich*, *Atty. Frank H. Scialdone, Atty. Terence L. Williams,* Mazanec, Raskin & Ryder Co., L.P.A., 100 Franklin's Row, 34305 Solon Road, Cleveland, Ohio 44139 for Defendant-Appellee.

Dated:  September 29, 2022

**Robb, J.**

{¶1}    Appellant James R. Keller appeals the August 11, 2021 judgment granting Appellee, the Carroll County Board of Commissioners, summary judgment on the basis of political subdivision immunity.  Appellant contends a genuine issue of material fact exists as to whether the road on which he was injured was in disrepair at the time of his accident, and as such, he claims a genuine issue exists as to whether Appellee is immune from liability.  Thus, Appellant contends summary judgment was improper.  For the following reasons, we affirm.

Statement of the Case

{¶2}    On April 27, 2020, Appellant filed a complaint against Appellee alleging negligence, recklessness, wanton conduct, and negligent infliction of emotional distress. Appellant alleged that on August 13, 2015, he was driving his motorcycle on Blade Road when he approached a curve, lost control of his motorcycle, and was struck by an oncoming truck.  He was ejected from the motorcycle, pinned underneath the truck, and sustained serious injuries.

{¶3}    Appellant further alleged that at the time of his accident, Appellee was resurfacing Blade Road, and it was in disrepair.  He averred the part of the road that he was traveling was unsafe for travel and remained open despite its disrepair.

{¶4}    Appellee moved for summary judgment alleging it was entitled to political subdivision immunity under R.C. 2744.02.  In response, Appellant asserted the "in repair" exception to immunity applied under R.C. 2744.02(B)(3).

{¶5}    The trial court granted Appellee summary judgment.  (August 11, 2021 J.E.).  The court found, as undisputed facts, that on August 13, 2015, Appellant went left of center on Blade Road near a curve in the road and collided with a pick-up truck.  This section of the road is maintained by Appellee and, on August 6, 2015, the road

department began a chip and seal repair job on the northern section of Blade Road where the accident occurred.  On August 13, 2015, the same day as the accident, the resurfacing was complete, and a "Loose Gravel" sign was posted next to the road and remained there at the time of the accident.

{¶6}    The parties agree Carroll County is a political subdivision under R.C. 2744, and it was engaged in a governmental function at all relevant times, and therefore, entitled to immunity under R.C. 2744 unless an exception applied.  (August 11, 2021 J.E.). Consistent with Appellant's argument, the court analyzed R.C. 2744.02(B)(3), which excepts immunity when a political subdivision causes injury, death, or loss to person or property due to "their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads."

{¶7}    The trial court held the R.C. 2744.02(B)(3) exception did not apply.  (August 11, 2021 J.E.).  The court cited the deposition testimony of Appellee's engineer and employee, who stated the chip and seal repair work was completed prior to the accident. (August 11, 2021 J.E. at 3).  The court found Appellee had "in fact performed its duties to keep the public road in repair by performing the chip and repair work."  (August 11, 2021 J.E.).  The court further held no testimony or evidence was presented to show the road had deteriorated or was in worse condition than before the project.  (August 11, 2021 J.E.).

{¶8}    The court went on to find the "only evidence presented that would come close to satisfying the *Lakota [v. Ashtabula, 11th Dist. Ashtabula No. 2015-A-0010, 2015-Ohio-3413,]* rule" was from Michael Keller, Appellant's son, who stated in his deposition so much loose gravel was present on Blade Road that one could scoop it up like in a sandbox.  (August 11, 2021 J.E.).  The court found, in part, this testimony was "not convincing enough to rise to the level of applying the *Lakota* rule, especially when weighed against all of the contradicting testimony and evidence presented. In short even if there was loose gravel present, the Court would not apply R.C. § 2744.02(B)(3) immunity exceptions in this case."  (August 11, 2021 J.E.).

{¶9}    Appellant appealed and raises one assignment of error.

## Assignment of Error

{¶10} Appellant's sole assigned error asserts:

"The trial court erred in granting appellee's motion for summary judgment on the issue of political subdivision immunity because genuine issues of material fact exist as to whether the road was "in repair" per R.C. 2744.02(B)(3)."

{¶11} Appellant argues the existence of loose stone from the county's road resurfacing caused his accident and showed the road was in a state of disrepair such that the R.C. 2744.02(B)(3) exception to immunity applied. Appellant also contends the trial court erred in its summary judgment opinion by making certain inferences against him, as the nonmoving party, and it erred by weighing the credibility of witnesses.

{¶12} We review summary judgment decisions de novo and apply the same test as the trial court in determining whether summary judgment was proper. *Cole v. Am. Industries & Resources Corp.*, 128 Ohio App.3d 546, 552, 715 N.E.2d 1179 (7th Dist.1998).

{¶13} Pursuant to Civ.R. 56(C), summary judgment should be granted when reasonable minds could reach but one conclusion and that conclusion is adverse to the nonmoving party. The moving party has the burden of showing no issue exists as to any material fact. *State v. Licsak*, 41 Ohio App.2d 165, 324 N.E.2d 589 (1974); *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus (1988).

{¶14} Once the moving party meets his burden, the opposing party may not rely on the allegations in his pleadings, but must set forth facts showing there is a genuine issue and produce evidence on issues that the party has the burden of proving at trial. Civ.R. 56(E); *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108, 570 N.E.2d 1095 (1991), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining a motion for summary judgment, the trial court will construe the evidence most strongly in favor of the nonmoving party and grant summary judgment where that party fails to make a showing sufficient to establish the existence of an essential element upon which that party bears the burden of production. *Celotex,* at 322, 106 S.Ct. 2548.

**{¶15}** In a case involving political subdivision immunity, there are three tiers. The first tier is "the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function." *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, ¶ 15, citing R.C. 2744.02(B) and *Cater v. Cleveland*, 83 Ohio St.3d 24, 28, 697 N.E.2d 610 (1998). However, this immunity is not absolute.

**{¶16}** The second tier involves determining if any of the five exceptions in R.C. 2744.02(B) apply "to expose the political subdivision to liability." *Pelletier*, at ¶ 15, citing *Cater*, 83 Ohio St.3d at 28. If none apply, then the court moves to the third tier, which requires a determination as to whether any of the defenses listed in R.C. 2744.03 apply to provide a defense against liability. *Id.*

**{¶17}** Here, there is no dispute Appellee is generally immune as a political subdivision. When a political subdivision establishes general immunity, the burden shifts to the plaintiff to demonstrate one of the exceptions to immunity applies. *Allied Erecting Dismantling Co. v. Youngstown*, 151 Ohio App.3d 16, 783 N.E.2d 523, 2002-Ohio-5179, ¶ 24. The only exception to immunity at issue before us provides: "Except as otherwise provided * * *, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair * * *." R.C. 2744.02(B)(3).

**{¶18}** The Ohio Supreme Court has clearly defined when the "in repair" exception applies. *Pelletier, supra*. *Pelletier* held in part:

> The General Assembly, the arbiter of public policy in Ohio, has acted "to limit political-subdivision liability for roadway injuries and deaths," * * * with a purpose to preserve " 'the fiscal integrity of political subdivisions,' " * * * And it did so, in part, by limiting a political subdivision's liability for regulating, maintaining, and repairing public roads to the negligent failure to keep them in repair and to remove obstructions from them."

> Rather than second-guess the policy decisions of the legislative branch, "[o]ur role, in exercise of the judicial power granted to us by the Constitution, is to interpret and apply the law enacted by the General

Assembly." * * * And because R.C. 2744.02(B)(3) is unambiguous, we must simply apply its plain meaning here." (Citations omitted.)

*Id.* at ¶ 31-32. *Pelletier* found the sign at issue there was "in repair" because "it was in good or sound condition and was not deteriorated or disassembled." *Id.* at ¶ 33.

{¶19} This "in repair" exception to immunity applies when a political subdivision negligently fails to keep the road in repair. *Id.* The statute does not define the phrase "in repair," and the Supreme Court has defined "in repair" as "the state of being in good or sound condition." *Webster's Third New International Dictionary* 1923 (2002). *See also Sanderbeck v. Medina Cty.*, 130 Ohio St.3d 175, 2011-Ohio-4676, 956 N.E.2d 832, ¶ 14 (O'Donnell, J., dissenting) ("The plain meaning of the word 'repair' is 'to put back in good condition after damage [or] decay.' *Webster's New World College Dictionary* (4th Ed.2000) 1214").

{¶20} In *Heckert v. Patrick*, 15 Ohio St.3d 402, 473 N.E.2d 1204 (1984), the Ohio Supreme Court interpreted language under a previous version of Section 305.12 directing counties to keep roads "in proper repair." *Id.* at 406, 473 N.E.2d 1204 (quoting R.C. 305.12 (1982)). *Heckert* said it was "the intent of the General Assembly ... to place a duty on the commissioners only in matters concerning either the deterioration or disassembly of county roads and bridges." *Id.* at 406, 473 N.E.2d 1204. Building upon this explanation, this court further found that "in repair," under Section 2744.02(B)(3), refers "in its ordinary sense * * * to maintaining a road's condition after construction or reconstruction, for instance by fixing holes and crumbling pavement. It deals with repairs after deterioration of a road or disassembly of a bridge, for instance." *Bonace v. Springfield Twp.*, 179 Ohio App.3d 736, 2008-Ohio-6364, 903 N.E.2d 683, ¶ 29.

{¶21} Consistent with *Bonace* and the *Pelletier* definition of "in repair," this exception does not apply here; Blade Road was in good condition and was also neither disassembled nor deteriorated at the time and location of Appellant's accident. *Id.* at ¶ 33. Thus, the county is immune from liability since, in moving for summary judgment, the county submitted evidence demonstrating Blade Road was resurfaced in accordance with its normal procedures and the applicable manual.

{¶22} The county highway superintendent Mike Bryan testified he was at the jobsite when this road was resurfaced and when the sweeping was done at the conclusion of the project. Bryan described the chip-seal process as using an "asphalt distributor" to spray liquid "asphalt" on the surface of the road and then using a "chip spreader" to cover the surface with stone referred to as "chip," before rolling the stones into place with "rubber tire rollers" to ensure the least amount of height as possible. (Bryan Depo. p. 45-49; 54-55.) Bryan verified the road surface was swept consistent with the county's protocol and this project was concluded before Appellant's accident. Bryan agreed there is always some amount of loose stone present on the road after the completion of a chip and seal resurfacing project and after the requisite sweeping. (Bryan Depo. p. 60; 75-76; 100.)

{¶23} The county engineer, Brian Wise, also confirmed in his testimony the road repair was complete and, after the spreading and rolling of pea gravel across the roadway, his department sweeps the road one time consistent with the Ohio Department of Transportation Manual. Wise confirmed Blade Road was swept on the date of Appellant's accident before the accident happened. (Wise Depo. p. 25-29.)

{¶24} The county road supervisor Arthur Furbee also testified about the chip and seal process. He explained when resurfacing a road with chip seal, they first sweep the road and fill any potholes before spraying the road with "emulsion" or "asphalt." Next, they use the "chip spreader" to lay the aggregate or stone, which is then rolled into the road before the road is swept one time. During his deposition, Furbee was asked about loose stone or aggregate after the chip and seal process is completed. He explained, "10% is industry standard that will come back up." (Furbee Depo. p. 9-11.)

{¶25} The foregoing testimony establishes the road was in good and sound condition, being recently resurfaced. However, according to Appellant's witnesses, the nature of a chip and seal road surface is generally not good for drivers of motorcycles or bicyclists. Michael Keller testified he avoids traveling on chip and seal roads when on his motorcycle. Keller testified he would turn around if he encountered a chip and seal road while operating his motorcycle. Keller said these chip and seal roads by their very nature are generally and consistently dangerous for motorcyclists and even drivers of cars.

(Keller Depo. p. 16.)  His statements in this regard were not limited to Blade Road on the date of his father's accident, but were about his experience with all chip and seal roads he has encountered.

{¶26} Keller also explained the county had used this chip and seal method to resurface the road in front of his home, and he called it "extremely dangerous" for a motorcycle rider stating it is "worse than being on ice.  The gravel moves, your tires are round, the pebbles are round, so your tire rolls around side to side. So even an experienced driver like myself, we put our feet down and go slow.  That way like you have skis on."  (Keller Depo. p. 15-16.)  Keller explained that unlike a blacktop road, on a chip and seal road "the gravel moves underneath your tire and it washes out.  That's how bikers describe it.  You wash out."  (Keller Depo. p. 16.)

{¶27} Further, one of plaintiff's experts, Henry Lipian, a former Ohio State Highway Patrolman and accident reconstructionist, also agreed that by their very nature, chip and seal roads will generally have some loose gravel on the surface, especially after a recent road resurfacing is completed.  Lipian explained in part that the chip and seal process is "just gravel sunk into the tar and that's it."  He stated:

> I would be pretty surprised if there was no loose gravel on the road at all (based on how recent the work was done in relation to the time of the [Appellant's] crash.)  "I've never seen a road in my experience where this kind of a resurfacing is done and then a day later there is no loose gravel anywhere * * *.  It takes time for the gravel, even after it's been swept, for traffic to kick it off the road.  I've had it where I can't even ride my bicycle on these types of road surfaces.

(Lipian Depo. p. 32-33.)  "[T]he longer the period of time goes after the [chip and seal] paving project is done, the less loose gravel that there this. * * * [Some quantity of loose gravel] would be expected."  (Lipian Depo. p. 66.)  Thus, according to Lipian and Keller, a chip and seal road is a road surface that, even when in good condition or freshly refurbished, likely has some loose stone and is a less than favorable surface when on a bicycle or motorcycle.  Their collective experiences with this type of road surface do not identify any alleged negligence or deficiency on the part of the county reflecting that these

Case No. 21 CA 0952

roads in their experience are in a state of disrepair. To the contrary, their testimony reflects this road surface is not preferred for motorcyclists based on the very essence that a chip and seal road is gravel rolled into "liquid asphalt" or "tar."

{¶28} Because some amount of loose gravel is a characteristic of a road that has been recently resurfaced via the chip and seal process, the presence of loose stone does not reflect that Blade Road was a road in disrepair such that this exception to immunity applies. Consequently, Appellant fails to raise a triable fact as to whether Appellant's injury was caused by the county's "failure to keep" this road "in repair," and thus, summary judgment is warranted in the county's favor. R.C. 2744.02(B)(3); *See Ruckman v. Smith*, __ N.E.3d __, 11th Dist. Trumbull No. 2021-T-0036, 2022-Ohio-1813, ¶ 28 ("If the Legislature intended for exceptions to immunity to include a road that is hazard free, without blemish, reasonably safe, or some other similar term, it would have spoken.")

{¶29} Further, unlike *Lakota v. Ashtabula*, 11th Dist. Ashtabula No. 2015-A-0010, 2015-Ohio-3413, relied on by Appellant, this is not a case where the repair work created a depression or hole filled with gravel in the middle of the roadway thereby creating an unreasonably dangerous condition. Instead, the road here was in a state of good repair, but by the very nature of the process may have left some amount of loose stone as a result of the repair.

{¶30} In *Sanderbeck*, the court found the road in question before it was *not* in a state of good repair because the roadway was deteriorated near the location where the driver lost control of his car. *Sanderbeck v. Medina*, 9th Dist. Medina No. 09CA0051-M, 2010-Ohio-3659, ¶ 8. In the present case, the opposite is present, i.e., the road was recently resurfaced. The "in repair" exception to immunity does not apply because the existence of loose stone is inherent in the chip seal process, and consequently, is common with a recently chip and seal resurfaced road. The process involves spreading pea gravel onto "liquid asphalt." (Bryan Depo. p. 45-46; 55; Wise Depo. p. 25-29.) Thus, the inconsistent testimony about the amount of loose gravel at the scene does not create a genuine issue of material fact.

{¶31} Furthermore, the trial court's decision reflects an understanding of the nature of a chip and seal road surface. It explained in part:

There was no testimony or evidence presented by the Plaintiff to show that the Defendant's repair work had caused an additional danger that wouldn't already be present on a road that is maintained by the chip and seal method. There was also no evidence or testimony presented to show that the road had somehow deteriorated since the County finished the chip and seal project earlier in the day.

(Aug. 11, 2021 J.E.)

**{¶32}** We note Appellant contends the trial court erred when it drew a material inference against him even though he was the non-moving party. He also asserts the trial court erred by ruling on the credibility of witnesses when rendering summary judgment.

**{¶33}** The trial court cited the deposition testimony of Wise and Bryan for its conclusion the chip and seal work had been completed before Appellant's accident. (Aug. 11, 2021 J.E.). The court concluded from this testimony Appellee "had in fact performed its duties to keep the public road in repair by performing the chip and seal work." (Aug. 11, 2021 J.E.). The court proceeded to hold Appellant presented no testimony or evidence "to show that the road was in a worse condition or somehow deteriorated from its condition prior to the chip and seal project. *In fact, one can assume just by the nature of a chip and seal project that the road was in a better maintained condition at the time of the accident than it was on August 5, 2015, when the project began*." (Emphasis added.) (Aug. 11, 2021 J.E.).

**{¶34}** We agree with Appellant the court appears to make an inference in favor of Appellee about the condition of the road before and after the resurfacing. However, the court's statement in this regard does not affect our conclusion that Appellant did not satisfy its burden and establish the R.C. 2744.02(B)(3) exception to immunity applies.

**{¶35}** We also agree that the "[r]esolution of a motion for summary judgment does not include trying the credibility of witnesses." *Mitchell v. Woodbridge*, 7th Dist. Mahoning No. 98-CA-255, 2001-Ohio-3253167, *2, quoting *Killilea v. Sears, Roebuck & Co.*, 27 Ohio App.3d 163, 167, 499 N.E.2d 1291 (10th Dist. 1985), and citing *Duke v. Sanymetal Products Co.*, 31 Ohio App.2d 78, 83, 286 N.E.2d 324 (1972). Here, however, because

we find summary judgment was warranted despite the presence of loose gravel, the credibility of the witnesses about the amount of loose gravel does not turn the case. *Id.* While the trial court may have made certain errors in its summary judgment analysis, because its ultimate decision is the correct one, and our review is de novo, the trial court's error is not determinative. *See Adlaka v. N.Y. Life Ins. & Annuity Corp.*, 7th Dist. No. 13 MA 171, 2015-Ohio-605, 27 N.E.3d 871, ¶ 9.

**{¶36}** Based on the foregoing, Appellant's sole assigned error lacks merit.

<u>Conclusion</u>

**{¶37}** We find Appellant did not establish that the R.C. 2744.02(B)(3) exception to immunity applies. Accordingly, we conclude summary judgment was proper and affirm the trial court's decision.

Donofrio, P J., concurs.

D'Apolito, J., concurs.

--------------------

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Carroll County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**